Dubois et al v. USDOA et al          CV-95-050-B   09/30/98  P

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**Roland C. Dubois, et al.**

           **v.**                                    C-95-50-B

**U.S. Dep't of Agriculture, et al.**


## MEMORANDUM AND ORDER


    Plaintiffs in this citizen-suit enforcement action seek to compel Loon Mountain Recreation Corporation ("Loon") to pay civil penalties to the United States stemming from violations of the Federal Water Pollution Control Act, 33 U.S.C.A. §§ 1251 et seq. (West 1986 & Supp. 1998), commonly known as the Clean Water Act ("CWA").  Loon moves to dismiss plaintiffs' claim, arguing that the action no longer presents a justiciable case or controversy.  I agree and, accordingly, grant Loon's motion to dismiss.


## I.  BACKGROUND

    Loon operates a ski area in northern New Hampshire.  Because part of the ski area is located in the White Mountain National Forest, Loon's operations require a special-use permit issued by the United States Forest Service.  See 16 U.S.C.A. § 497(b) (West

Supp. 1995). In 1986, Loon asked the Forest Service to amend the permit to allow it to expand its ski operations. In 1993, after several years of review, the Forest Service issued a Record of Decision ("ROD") approving a revised version of Loon's expansion plan.

The plan approved by the ROD authorized Loon to increase its use of Loon Pond as a water source in its snow-making operations. The plan also contemplated that Loon would replace water taken from the pond during the snow-making season by twice annually refilling the pond with water from the East Branch of the Pemigewasset River (the "East Branch"). Additionally, it authorized Loon to continue its past practice of routinely discharging water from its snow-making pipes into Loon Pond. At various times, these discharges have included water from Loon Pond, as well as the East Branch and Boyle Brook, both of which serve as additional sources of snow-making water.

Plaintiff Roland Dubois filed this action challenging Loon's expansion plan. Dubois was joined in his claims by intervenor Restore: The North Woods ("Restore"), an environmental organization. Loon intervened as a defendant. Plaintiffs' complaint alleged, among other things, that the plan violated the CWA in that Loon was able to discharge pollutants (contained in the water taken from the East Branch and Boyle Brook) into Loon Pond without first obtaining a National Pollutant Discharge Elimination System ("NPDES") permit, as required by 33 U.S.C.A. § 1342(a) (West 1986 & Supp. 1998). Plaintiffs sought both

2

equitable relief and an assessment of civil penalties against Loon under the CWA. See 33 U.S.C.A. § 1365 (West 1986 & Supp. 1998) (authorizing "any citizen" to sue to enforce the CWA and to compel an assessment of civil penalties).

I subsequently granted the Forest Service's motion for summary judgment. See Dubois v. United States Dep't of Agric., CV-95-50-B (D.N.H. Nov. 2, 1995). In Dubois v. United States Dep't of Agric., 102 F.3d 1273, 1301 (1st Cir. 1996), cert. denied, 117 S. Ct. 2510 (1997), however, the First Circuit Court of Appeals held that both plaintiffs had standing to maintain their claim for injunctive relief, reversed my order, and directed entry of judgment granting plaintiffs' request for injunctive relief. See Dubois, 102 F.3d at 1282-83. The First Circuit did not address the merits of plaintiffs' claim for civil penalties - an issue which had not yet been considered in the district court.

Upon remand, I issued an order granting plaintiffs' claim for injunctive relief. See Dubois v. United States Dept. of Agric., CV-95-50-B (D.N.H. May 5, 1997). Accordingly, the only substantive issue that remains undecided is whether civil penalties should be assessed against Loon for its past violations of the CWA pursuant to 33 U.S.C.A. § 1319(d) (West 1986 & Supp. 1998). Loon moves to dismiss, arguing that, in light of the injunction already in place, plaintiffs' civil penalties claim does not present a justiciable case or controversy.

## II. DISCUSSION[1]

This case presents a complex justiciability question that requires an understanding of both standing and mootness concepts.[2] Accordingly, I begin by discussing the way in which

---

[1] ~~In Lujan v. Defenders of Wildlife~~, 504 U.S. 555 (1992), the Supreme Court held that:

> The party invoking federal jurisdiction bears the burden of establishing [the] elements [of standing]. Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.

Id. at 561 (citations omitted). Here, discovery has been completed and plaintiffs have asked me to rule on the merits of their claim for civil penalties. Accordingly, I review the evidence to determine whether plaintiffs have proved that their claim presents a justiciable case or controversy.

[2] Plaintiffs preliminarily argue that the First Circuit's previous finding that they had standing to pursue their claims for injunctive relief is the "law of the case" that cannot now be reconsidered. See CPC Int'l, Inc. v. Northbrook Excess & Surplus Ins. Co., 46 F.3d 1211, 1215 (1st Cir. 1995) ("The law of the case doctrine bars litigants from rearguing issues previously decided on appeal."). The First Circuit's decision that plaintiffs had standing to bring suit for injunctive relief, however, does not resolve the separate question of whether their claim for civil penalties presents an ongoing, live controversy. See Arizonans for Official English v. Arizona, 117 S. Ct. 1055, 1068 (1997) ("To qualify as a case fit for federal court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'") (quoting Preiser v. Newkirk, 422 U.S. 395, 401 (1975)). As the law of the case doctrine applies only to issues actually decided, it does not prevent me from determining the present justiciability of plaintiffs' claim for civil penalties. See Quern v. Jordan, 440 U.S. 332, 347 n.18 (1979); Creek v. Village of Westhaven, 144 F.3d 441, 445 (7th Cir. 1998); Bowling v. Pfizer, Inc., 132 F.3d 1147, 1150 (6th Cir. 1998).

4

standing doctrine has been refined by the Supreme Court's recent opinion in <u>Steel Co. v. Citizens for a Better Env't</u>, 118 S. Ct. 1003 (1998). I then consider the merits of Loon's contention that plaintiffs' request for civil penalties became moot when I enjoined Loon from further violating the CWA. Finally, I evaluate plaintiffs' argument that their claim is saved by the "voluntary cessation of illegal activities" exception to mootness.

### A. <u>Standing</u>

Both constitutional and prudential considerations potentially constrain a plaintiff's standing to sue in federal court. <u>See</u> <u>Bennett v. Spear</u>, 117 S. Ct. 1154, 1161 (1997). In cases alleging CWA violations, however, Congress has superseded any prudential limitations by broadly conferring standing to sue on "any citizen." 33 U.S.C.A. § 1365(a) (West 1986 & Supp. 1998). Accordingly, to establish standing, plaintiffs need only satisfy the requirements of Article III. <u>See</u> <u>Save Our Community v. EPA</u>, 971 F.2d 1155, 1160 n.10 (5th Cir. 1992); <u>Public Interest Resource Group of New Jersey, Inc. v. Powell Duffryn Terminals, Inc.</u>, 913 F.2d 64, 70 n.3 (3d Cir. 1990).

The Supreme Court has determined that the "irreducible constitutional minimum of standing" consists of three requirements: (1) an "injury in fact" -- an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection to the alleged injury that

is "fairly . . . traceable" to the defendant; and (3) a likelihood that the injury will be "redressed by a favorable decision." Bennett, 117 S. Ct. at 1163 (internal citations omitted) (quoting Lujan, 504 U.S. at 560-61). If any of these requirements is not present with respect to any claim, a federal court lacks jurisdiction to consider that claim and must dismiss it for lack of subject matter jurisdiction.

The Supreme Court recently analyzed Article III's redressability requirement in the context of a citizen suit for civil penalties in Steel Co., 118 S. Ct. at 1017. The citizen-suit plaintiff in that case sought an award of civil penalties stemming from past violations of the Emergency Planning and Community Right to Know Act ("EPCRA"), 42 U.S.C.A. § 11001 et seq. (West 1995); Steel Co., 118 S. Ct. at 1009. Under EPCRA, all civil penalties assessed against a violator are paid to the United States Treasury. The Steel Co. Court held that civil penalties stemming from a prior injury to a citizen-suit plaintiff, but not paid to that plaintiff, do not redress any legitimate Article III injury. See id. at 1018-19. Instead, the court concluded that the imposition of civil penalties in such circumstances would do nothing more than vindicate "'the undifferentiated public interest' in faithful execution of [the law]." Id. (quoting Lujan, 504 U.S. at 577). Consequently, the Court held that the citizen-suit plaintiff lacked standing to seek such penalties. Id.

6

The Court's reasoning in Steel Co. also applies to citizen-suit claims for civil penalties under the CWA, as both the EPCRA and the CWA require that civil penalties be paid to the federal government. See 42 U.S.C.A. § 11045(c) ("Any person (other than a governmental entity) who violates any requirement of section 11022 or 11023 of [the EPCRA] shall be liable to the United States for a civil penalty"); 33 U.S.C.A. § 1319(d)(West 1986 & Supp. 1998) (providing civil penalties for violations of the CWA, but not explicitly stating that such penalties must be paid to the U.S. Treasury); Friends of the Earth v. Archer Daniels Midland Co., 780 F.Supp. 95, 101 (N.D.N.Y 1992) (noting that it is "well established that civil penalties [for violations of the CWA] must be paid to the United States Treasury"). Nevertheless, plaintiffs argue that Steel Co. is distinguishable because, in the instant case, plaintiffs alleged in their complaint that Loon's CWA violations are ongoing, (Pl.'s Br. Addressing Steel Co., Doc. No. 166 at 6), whereas the plaintiffs in Steel Co. did not allege any continuing violations. Plaintiffs contend that this distinction is meaningful because, even though they will not benefit financially if civil penalties are levied against Loon, the imposition of such penalties will deter Loon from continuing to violate the CWA. This deterrence, plaintiffs argue, will redress the imminent injuries they face from Loon's continuing violations. Loon responds that even if plaintiffs' attempt to distinguish Steel Co. is viable in certain cases, it is inapplicable here because plaintiffs' claim became moot when I

7

enjoined Loon from further violating the CWA.[3]

## B. Mootness

The fact that a plaintiff may have standing to sue when suit is commenced does not end the inquiry. "Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies." Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990) (citing Deakins v. Monaghan, 484 U.S. 193, 199 (1988)). To invoke the jurisdiction of a federal court at the commencement of a lawsuit, a plaintiff must establish a "personal stake" in the action sufficient to satisfy the standing requirements imposed by Article III. Gollust v. Mendell, 501 U.S. 115, 125 (1991). Article III's "case-or-controversy requirement subsists through all stages" of litigation. Lewis, 549 U.S. at 477; Arizonans for Official English, 117 S. Ct. at 1068. Thus, for a federal court to retain jurisdiction over a case, it is not enough that a justiciable dispute existed when the suit was commenced. See Lewis, 494 U.S. at 477. Rather, "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." Arizonans for Official English, 117 S. Ct. at 1068 (quoting Preiser, 422 U.S.

---

[3] One arguably could read Steel Co. more broadly to provide that civil penalties payable to the government for past violations cannot redress a citizen-suit plaintiff's injuries, regardless of whether violations are ongoing when suit is commenced. Loon does not make this argument, however, and I need not address it here as I ultimately conclude that plaintiffs' claim for civil penalties is moot, regardless of whether they had standing to seek such penalties when suit was brought. See Arizonans for Official English, 117 S. Ct. at 1068 (standing to sue need not be determined where case is moot).

8

at 401).

In Arizonans for Official English, the Supreme Court described the mootness doctrine as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness)."  117 S. Ct. at 1069 n.22 (quoting United States Parole Comm'n v. Geraghty, 445 U.S. 388, 395-97 (1980) (in turn quoting Henry P. Monaghan, Constitutional Adjudication: The Who and When, 82 Yale L.J. 1363, 1384 (1973))).  Consequently, "throughout [the course of] the litigation, [a] plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'"  Spencer v. Kemna, 118 S. Ct. 978, 983 (1998) (quoting Lewis, 494 U.S. at 477-78 (1990)).  When "the party invoking federal court jurisdiction no longer has a personal stake in the outcome of the controversy," a once justiciable controversy becomes moot and the court loses subject matter jurisdiction to consider the matter further.  Thomas R.W. v. Massachusetts Dep't of Educ., 130 F.3d 477, 479 (1st Cir. 1997) (quoting Boston and Maine Corp. v. Brotherhood of Maintenance of Way Employees, 94 F.3d 15, 20 (1st Cir. 1996)).

The Fourth Circuit Court of Appeals recently applied the Court's reasoning in Steel Co. to dismiss as moot a citizen suit for CWA civil penalties.  In Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. Corp., 149 F.3d 303 (4th Cir. 1998), the citizen-suit plaintiffs prevailed before the district court on

9

their claims for civil penalties but were denied declaratory and injunctive relief. When the plaintiffs subsequently appealed the size of the civil penalty award, but did not appeal the denial of injunctive relief, the Fourth Circuit, relying on Steel Co., found the action was "moot because the only remedy currently available to Plaintiffs -- civil penalties payable to the government -- would not redress any injury [they] have suffered." Id. at 307. Consequently, the court vacated the district court's award of civil penalties and remanded the case with instructions to dismiss.[4] Id. at 306.

In the instant case, I enjoined Loon from further violating the CWA. Plaintiffs have not argued that the scope of the injunction is insufficient to accomplish this result. Nor have they sought to have Loon held in contempt for violating the injunction. Further, although plaintiffs belatedly assert that Loon's violations continue despite the injunction, they have failed to produce any credible evidence to support this claim.[5]

---

[4] In Friends of the Earth, the Fourth Circuit expressly overturned its prior decision in Sierra Club v. Simkins Indus., Inc., 847 F.2d 1109, 1113 (4th Cir. 1988), in which it held that CWA civil penalties could redress a citizen-suit plaintiff's injury stemming from CWA violations. 149 F.3d at 304 n.4. In dismissing the plaintiff's claim for civil penalties as moot, the Fourth Circuit also implicitly overturned its prior decision in Chesapeake Bay Found., Inc. v. Gwaltney of Smithfield, Ltd., 890 F.2d 690, 696-97 (4th Cir. 1989), which held that the mooting of a claim for injunctive relief does not moot a claim for CWA civil penalties.

[5] Plaintiffs claim, without providing supporting evidence, that Loon continues to violate the CWA because it does not segregate East Branch water from Loon Pond water in its snow-making system. Consequently, plaintiffs allege, when the system

10

Absent evidence of continuing misconduct, there are no imminent violations of the CWA for civil penalties to deter.[6]  Instead, in the words of Justice Scalia, an award of civil penalties in such circumstances would accomplish nothing more than to permit the plaintiffs to "derive great comfort and joy from the fact that the United States Treasury is not cheated, that . . . [Loon] gets . . . [its] just desserts, or that the nation's laws are faithfully enforced."  Steel Co., 118 S. Ct. at 1019.  Such "psychic satisfaction," however, does not redress a cognizable Article III injury.  Id.; see also Friends of the Earth, 149 F.3d at 304.  Thus, I conclude that the plaintiffs have failed to establish that the imposition of civil penalties against Loon would redress any harm that the plaintiffs either have previously suffered or imminently face.  Their action, therefore, is moot.[7]

---

is drawing water from all sources simultaneously, East Branch water still mixes with Loon Pond water and drains into Loon Pond. Additionally, plaintiffs contend that Loon could surreptitiously violate the injunction with relative ease and little risk of discovery.  If plaintiffs are able to credibly allege that Loon is currently violating the injunction, they remain free to seek an order from the court holding Loon in contempt.  However, they may not save their civil penalties claim by falling back on speculative assertions that Loon is violating the injunction after the discovery period has closed.

[6]  Civil penalties potentially serve as a general deterrent to future violations by others.  Any interest that plaintiffs have in general deterrence, however, is shared by the public at large.  Accordingly, plaintiffs cannot ground their redress-ability claim on the general deterrent effect of the CWA's civil penalty provision.  See Steel Co., 118 S. Ct. at 1019 (generalized interest in deterrence does not satisfy Article III).

[7]  The First Circuit's opinion in Pawtuxet Cove Marina, Inc. v. Ciba-Geigy Corp., 807 F.2d 1089, 1094 (1st Cir. 1986), is consistent with this position.  In that case, the court construed

See Arizonans for Official English, 117 S. Ct. at 1-68; Friends of the Earth, 149 F.3d at 304.

C.  **The Voluntary Cessation Exception to Mootness**

Plaintiffs argue that their claim for civil penalties is saved by an exception to the mootness doctrine that applies when a defendant voluntarily ceases its illegal conduct before the court can rule on the merits of the case.  See Northeastern Fla. Chapter of the Associated Gen. Contractors of Am. v. Jacksonville, 508 U.S. 656, 661 (1993); City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1983).  "This exception is meant to prevent defendants from defeating a plaintiff's efforts to have its claims adjudicated simply by stopping their challenged actions, and then resuming their 'old ways' once the case [becomes] moot."  Boston Teachers Union, Local 66 v. Edgar, 787 F.2d 12, 16 (1st Cir. 1986) (quoting United States v. W.T. Grant Co., 345 U.S. 629, 632-33 (1953)).

The instant case falls well outside the voluntary cessation exception because Loon did not voluntarily stop its CWA

_____

the statutory language and purpose of the CWA's citizen-suit provision to allow such suits only when the plaintiff is able to allege a continuing likelihood that the defendant will violate the CWA if not enjoined.  See id.  The Supreme Court subsequently adopted this reading of the statute in Gwaltney of Smithfield Ltd. v. Chesapeake Bay Found., Inc., 484 U.S. 49, 56, 66.  En route to its holding in Pawtuxet, the First Circuit stated in dicta that, under the terms of the CWA, "[a] plaintiff who makes allegations warranting injunctive relief in good faith, judged objectively, may recover a penalty judgment for past violations even if the injunction proves unobtainable."  Pawtuxet, 807 F.2d at 1094.  Nowhere in that opinion, however, did the court address Article III's case-or-controversy requirement.  Rather, its opinion spoke only to statutory concerns and, therefore, is not instructive on the issue of constitutional justiciability.

violations.  See Boston Teachers Union, 787 F.2d at 12 (exception does not apply where cessation not "voluntary").  This is not a case where the defendant escaped an adjudication of the illegality of its actions by voluntarily ceasing its improper conduct before the court could act.  Rather, I have determined that Loon violated the CWA and enjoined it from engaging in future violations.  In the face of this injunction, Loon is not simply free to return to its "old ways" once this action for civil penalties becomes moot.

The voluntary cessation exception is grounded in necessity.  Absent such an exception, defendants might be tempted to engage in a game of legal "cat and mouse" by voluntarily ceasing illegal activities in the face of pending litigation only to resume that conduct when the claims against them have been declared moot.  It is this real likelihood that injury will imminently recur that justifies voluntary cessation as an exception to the requirements of Article III.  Cf. Honig v. Doe, 484 U.S. 305 341 (1988) (explaining that the possibility of recurrence after voluntary cessation justifies the exception to the mootness doctrine) (Scalia, J., dissenting).  In a case such as this, however, where the potential for recurrence of the challenged conduct is largely eliminated by an enforceable court order, the justification underlying the exception is not present.  See Deakins, 484 U.S. at 200-01 & n.4 (where party is barred from renewing challenged conduct by binding court action, concern that challenged conduct will be repeated is not "sufficiently real and immediate to show

an existing controversy" and, therefore, voluntary cessation exception does not apply); Sea-Land Serv., Inc. v. International Longshoremen's and Warehousemen's Union, 939 F.2d 866, 870 (9th Cir. 1991) ("'[L]egally compelled' cessation of [challenged] conduct is not 'voluntary' for purposes of . . . the mootness doctrine.") (quoting Enrico's, Inc. v. Rice, 730 F.2d 1250, 1253-54 (9th Cir. 1984)).

To fit this case within the voluntary cessation exception would be to both disfigure the exception and eviscerate justiciability requirements. Almost any claim where a plaintiff can assert that the challenged conduct "might" recur would be preserved for review under such an interpretation. This result plainly would contravene Article III's case-or-controversy requirement and would render the mootness doctrine meaningless. Consequently, I reject plaintiffs' attempt to apply the voluntary cessation exception to their claim for civil penalties.[8]

---

[8] Plaintiffs' citation to a line of cases in other courts holding that the mooting of an injunctive action does not moot an action for CWA civil penalties is of no avail. These cases either explicitly or implicitly rely upon the voluntary cessation exception to the mootness doctrine in reaching their conclusions. See Comfort Lake Ass'n Inc. v. Dresel Contracting, Inc. 138 F.3d 351, 356 (8th Cir. 1998) ("[E]ven if a polluter's voluntary permanent cessation of the alleged violations moots a citizen-suit claim for injunctive relief, it does not moot a related claim for civil penalties.") (citing Atlantic States Legal Found., Inc. v. Stroh Die Casting Co., 116 F.3d 814, 820 (7th Cir. 1997), cert. denied, 118 S. Ct. 442 (1997)); Natural Resources Defense Council v. Texaco Ref. & Mktg., Inc., 2 F.3d 493, 502-03 (3d Cir. 1993); Atlantic States Legal Found., Inc. v. Tyson Foods, Inc., 897 F.2d 1128, 1135 (11th Cir. 1990); Chesapeake Bay Found., 890 F.2d at 696-97. Because that exception does not apply to the instant case, these cases are distinguishable.
Additionally, to the extent that these courts rely on the

## III.  CONCLUSION

Under the terms of the CWA, the Administrator of the EPA is authorized to bring an action for civil or criminal penalties, 33 U.S.C.A. §§ 1319 (b) and (c), and, in so doing, would not encounter the same redressability problems faced by the plaintiffs.  As the EPA has not elected to seek civil penalties against Loon even though the United States is a party in this action, the court lacks jurisdiction to consider the matter further.

For the foregoing reasons, Loon's partial motion to dismiss for lack of subject matter jurisdiction (document no. 120) is granted.

---

CWA's policies and statutory framework to justify their conclusions, they ignore the fact that the mootness doctrine is grounded in Article III's case-or-controversy requirement. See Arizonans for Official English, 117 S. Ct. at 1068.  Several commentators, as well as Chief Justice Rehnquist, have advanced the notion that the mootness doctrine may derive as much from prudential considerations as from Article III.  See Honig, 484 U.S. at 330-32 (Rehnquist, C.J., concurring); Evan Tsen Lee, Deconstitutionalizing Justiciability:  The Example of Mootness, 105 Harv. L. Rev. 605, 636 (1992).  If this were the case, then reference to the applicable policies and statutory framework could very well guide the application of the doctrine in certain instances.  The Supreme Court, however, has consistently held that the mootness doctrine derives from the Article III requirement that federal courts hear only "cases and controversies."  See, e.g., Spencer, 118 S. Ct. at 983; Arizonans for Official English, 117 S. Ct. at 1067-69; Lewis, 494 U.S. at 477-78; Honig, 484 U.S. at 317.  Until such a time as the Court rethinks this position, Article III, and not congressional policy, will continue to govern the boundaries of the mootness doctrine and, concomitantly, the subject matter jurisdiction of the federal courts.

15

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

September 30, 1998

cc:  Roland C. Dubois
     Jed Z. Callen, Esq.
     Sylvia Quast, Esq.
     Stephen R. Herm, Esq.
     David Legge, Esq.
     Scott Hogan, Esq.
     Evan Slavitt, Esq.
     Alexander Kalinski, Esq.
     David Neslin, Esq.