**NATURAL RESOURCES DEFENSE COUNCIL; San Diego Baykeeper; Kenneth J. Moser, Plaintiffs,**

v.

**SOUTHWEST MARINE, INC., Defendant.**

**No. 96 CV 1492–B (AJB).**

United States District Court, S.D. California.

Nov. 20, 1998.

Charles S. Crandall, Stephen R. Rubin, Everett L. DeLano, Scott H. Peters, San Diego, CA, Joel R. Reynolds, Los Angeles, CA, for plaintiffs.

Steven P. McDonald, Edward Patrick Swann, Jr., Lloyd A. Schwartz, San Diego, CA, for defendant.

## OPINION AND ORDER DENYING MOTION TO PRECLUDE CIVIL PENALTIES

BREWSTER, Senior District Judge.

### I. Introduction

■ The question before this Court is whether Plaintiffs, two environmental organizations and a private individual, have standing to seek civil monetary penalties against Defendant, a private shipyard, under the Clean Water Act. Two recent cases suggest that plaintiffs in citizen suits do not have standing to seek civil penalties against alleged violators of environmental statutes. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998), and *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.* ("Laidlaw"), 149 F.3d 303 (4th Cir.1998). This motion raises a difficult question with potentially significant implications for the viability of citizen suits and their practical effectiveness on altering the behavior of alleged violators of the Clean Water Act. Both cases—*Steel Co.* and *Laidlaw*—involved suits for wholly past violations of an environmental statute. In contrast, the instant matter involves allegations of *both* past and present violations of the Clean Water Act. As such, both *Steel Co.* and *Laidlaw* are distinguishable from the instant case. No case law holds that when a plaintiff seeks injunctive remedies for *ongoing* violations under a federal environmental statute, the plaintiff lacks standing to seek statutorily-available civil penalties. Moreover, to construe *Steel Co.* and *Laidlaw* to hold that a plaintiff is barred from ever seeking civil penalties would represent a clear deviation from established case law and a major judicial intrusion on remedies clearly provided for by Congress. The usual rule is that once a party is able to establish standing under the Act, that party has standing to pursue all available remedies under the Act. *See, e.g., Flast v. Cohen,* 392 U.S. 83, 99–100, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968).

### II. Standing to Seek Civil Penalties Under the Clean Water Act

■ This Court's analysis begins and ends with the Federal Water Pollution Control

Act, or Clean Water Act, 33 U.S.C. § 1251 *et seq.* This Court must apply the terms of the Act unless those terms are judged to be unconstitutional. The Act provides for civil monetary penalties, *see* 33 U.S.C. § 1319(d), and citizen suit enforcement of the Act, *see* 33 U.S.C. § 1365(a). In *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.,* 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987), the Supreme Court interpreted the Act as prohibiting citizen suits for wholly past violations of the Act, but as allowing citizen plaintiffs to seek civil penalties when also seeking injunctive relief against a party that was alleged to be involved in ongoing violations of the Act. The terms of the statute, and its subsequent interpretation, dispose of this matter.

Steel Co. and *Laidlaw* are inapposite as both cases 'involved only wholly past violations of a statute'.[1] *Steel Co.* involved a citizen suit against a manufacturer who had allegedly violated the Emergency Planning and Community Right–to–Know Act of 1986 (EPCRA) by failing to comply with the filing/reporting requirements of the Act. As required by EPCRA, plaintiff filed a notice of suit with the EPA prior to filing its suit against the manufacturer. Upon receipt of the notice, the manufacturer immediately filed all of its overdue forms. Having filed the proper forms within 60 days, the manufacturer came into compliance with the Act.

Steel Co.'s discussion regarding the jurisdictional aspects of the case is irrelevant to the present case. In fact, much of the language in *Steel Co.* can properly be regarded as dicta. The case's holding is simple—a plaintiff does not have standing to bring a claim for civil penalties with wholly past violations. If this case were about wholly past violations of the Clean Water Act, it would be easily and immediately resolved by *Gwaltney.* *Gwaltney* held that "citizens, unlike the Administrator, may seek civil penal-

ties only in a suit brought to enjoin or otherwise abate an ongoing violation." 484 U.S. at 59, .108 S.Ct. 376. *Steel Co.* did not overrule *Gwaltney.* While *Steel Co.* called into question how the *Gwaltney* Court approached the case's jurisdictional question— deciding statutory subject-matter jurisdiction prior to Article III jurisdiction—*Steel Co.* expressly reinforced the holding of *Gwaltney:* "[t]he District Court had statutory jurisdiction over the suit in any event, since continuing violations were also alleged. It is true . . . that the issue of Article III standing which is addressed at the end of the opinion should technically have been addressed at the outset if the statutory question was not jurisdictional. But that also did not matter, since Article III standing was in any event found." *Steel Co.,* —— U.S. at ——, 118 S.Ct. at 1011.

 This Court uses great caution in reading *Steel Co.*—and especially its dictum—too broadly. The dictates of Art. III, § 2 apply to *"cases or controversies."* Courts decide cases, not constitutional controversies or abstract legal principles.[2] The constitutional language is plain on its face. The language does not mandate an individualized analysis of the remedies sought by a party. A party either has standing for the purposes of the "case or controversy" requirement of Art. III or it does not. That simple inquiry regarding a party's injuries and their justiciability for purposes of the *case*—though fraught with difficulties—is not further extended into, and made more troublesome by, a Microscopic analysis of standing for each remedy sought. *See, e.g., Flast v. Cohen,* 392 U.S. at 99–100, 88 S.Ct. 1942; *Jenkins v. McKeithen,* 395 U.S. 411, 423, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969) ("the concept of standing focuses on the party seeking relief, rather than on the precise nature of the relief sought."). The Court

---

**1.** As requested by Defendant, the Court takes judicial notice of *Dubois v. U.S. Dep't of Agriculture,* 20 F.Supp.2d 263, 1998 U.S. Dist. LEXIS 15198 (Sept. 30, 1998), and *San Francisco Baykeeper, et al. v. Cargill Salt Division, et al.,* Case No. 96–02161 CAL, but find those cases not on point and not binding on this Court. As such, this Court chooses not to follow them.

**2.** Even the great legal principle of judicial review espoused in *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803), can be seen as dicta. *Marbury*'s holding is a narrow one—that the Court lacked jurisdiction. Its dictum became accepted as part of the landscape of our legal jurisprudence only through repeated application.

does not view *Steel Co.* as upsetting that usual proposition.[3]

*Laidlaw* is consistent with the above analysis. Though plaintiff initially brought suit based on allegations of ongoing violations of the Clean Water Act, the court found that "Laidlaw had been in substantial compliance for several years at the time of the issuance of [the district court's] final order." As such, the court found the issue moot and held that a claim for civil penalties that would be paid to the U.S. Treasury would not redress plaintiff's injuries and thus was insufficient to confer standing for purposes of plaintiff's appeal. *Laidlaw* stands only for the proposition that if a plaintiff seeks *only* civil penalties, that remedy is insufficient to give it standing to maintain its action, at least until a more creative injury other than punishment and/or generalized "deterrence" is devised. In contrast, no case holds that a party bringing a citizen suit is precluded altogether by Article III from seeking civil penalties in any circumstance, especially when civil penalties are sought in conjunction with other forms of relief for ongoing violations. Thus, even if the *Laidlaw* decision were binding on this Court, its facts and legal conclusions are distinguishable from the present case.

The goal of the Clean Water Act was "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251. The penalties at issue in this case are statutorily defined, 33 U.S.C. § 1319(d) (court shall impose penalties for defined violations not to exceed $25,-000 per day), and were presumably established to further the Act's goal. A court's discretion is limited to a determination of the proper amount of penalties. *Id.* The availability and propriety of citizen suits was expressly provided for by Congress. *Id.* at § 1365(a). Congress intended that citizen suits be a supplemental means to gain enforcement of the Act. *See Gwaltney,* 484 U.S. at 60, 62, 108 S.Ct. 376 (citing legislative history). Congress authorized citizens to seek civil penalties. 33 U.S.C. § 1365(a) ("any citizen may commence a civil action on his own behalf ... [and][t]he district court shall have jurisdiction ... to apply any appropriate civil penalties under section 1319(d) of this title."). This Court's duty is to follow the plain language of the statute. In the absence of clear case authority by either the Supreme Court or this Circuit, this Court will not tread so easily on the powers inherent in the legislative branch.

### III. Conclusion

After thorough review and oral argument, the Court DENIES Defendant's Motion in Limine Seeking Preclusion of Civil Penalties.

IT IS SO ORDERED.

---

3. While the Supreme Court in *City of Los Angeles v. Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), stated that a court must inquire into the justiciability of an injunctive remedy, irrespective of a damages claim, the requirement is not the same when plaintiff has standing to pursue an injunctive remedy and also seeks damages. Case law interpreting *Lyons* does not conflict with that holding. Moreover, *Lyons* has not been extended beyond the injunctive relief field. More particularly, *Lyons* has not been extended to instances where statutory damages are available. *Lyons* represents the unique Supreme Court case in which the Court's standing analysis focused on the remedy sought instead of on, as is more traditional, the party involved. The novelty of *Lyons'* standing approach is illustrated by the dissenting opinion.

"By fragmenting the standing inquiry and imposing a separate standing hurdle with respect to each form of relief sought, the decision today departs significantly from this Court's traditional conception of the standing requirement and of the remedial powers of the federal courts. We have never required more than that a plaintiff have standing to litigate a claim. Whether he will be entitled to obtain particular forms of relief should he prevail has never been understood to be an issue of standing.... Our cases uniformly state that the touchstone of the Article III standing requirement is the plaintiff's personal stake in the underlying dispute, not in the particular types of relief sought." *Lyons,* 461 U.S. at 127, 103 S.Ct. 1660 (Marshall, J., dissenting).