**In re SOUTHDOWN, INC., LITIGATION.**

**No. C–3–93–270.**

United States District Court, S.D. Ohio, Western Division.

Jan. 13, 1999.

Robert J. Shostak, Jeffrey A. Kodish, Quintin F. Lindsmith, Athens, OH, for Plaintiff.

Frank L. Merrill, Christopher C. woods, Jacob A. Myers, David L. Smiga, Columbus, OH, for Defendant.

**DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART MOTION OF DEFENDANT SOUTHDOWN, INC., FOR SUMMARY JUDGMENT (DOC. # 81); DECISION AND ENTRY SUSTAINING UNOPPOSED, RENEWED MOTION OF PLAINTIFF GREENE ENVIRONMENTAL COALITION, INC., TO JOIN PARTIES AS DEFENDANTS AND TO AMEND COMPLAINT (DOC. # 87); GREENE ENVIRONMENTAL COALITION, INC., DIRECTED TO FILE AND TO SERVE AMENDED COMPLAINT WITHIN STATED PERIOD OF TIME**

RICE, Chief Judge.

Plaintiff, Greene Environmental Coalition, Inc. ("GEC"), has brought this law-

suit against Defendant, Southdown, Inc. ("Southdown"), under the citizen suit provision of the Clean Water Act ("CWA"), 33 U.S.C. § 1365. When this litigation was initiated, Southdown owned a tract of land within Greene and Clark Counties, Ohio, on which a large landfill is located. In its Complaint, GEC alleges that Southdown has discharged and continues to discharge pollution from that landfill into Mud Run Creek, without having obtained a permit as required by the CWA. GEC alleges that it is a non-profit corporation, comprised of citizens who reside or recreate near Mud Run Creek, in the vicinity of the area where Southdown is discharging pollutants without the requisite permit. In its Complaint, GEC requests that the Court declare that Southdown has violated the CWA, enjoin it from future violations of that statute, impose per diem civil penalties upon Southdown pursuant to 33 U.S.C. § 1319(d), and award costs to GEC, including the fees it incurs for attorneys and expert witnesses. Shortly after this lawsuit had been filed, Southdown filed an action against USX Corporation ("USX"), the entity from which it had purchased the land upon which the landfill is located. *Southdown, Inc. v. USX Corporation,* Case No. C–3–93–354 (S.D.Ohio).[1] The two lawsuits were consolidated by this Court, under the above caption. Thereafter, this litigation was stayed for an extended period of time, in order to permit the parties to attempt to resolve their disputes by way of a settlement. Their efforts in that regard failed to bear fruit.

While settlement efforts were ongoing, Southdown transferred the tract of land, upon which the landfill is located, to Dirtvest, Ltd. ("Dirtvest"), and 444 Sandhill,

Inc. ("Sandhill"). In response, GEC sought leave to amend its Complaint, to join Dirtvest and Sandhill as Defendants and to assert a claim under Ohio's Fraudulent Conveyances Statute against Southdown and the two to-be-added Defendants. *See* Doc. # 69. In a Decision of January 13, 1999, this Court overruled that motion in its entirety; however, the Court expressly stated that GEC could renew its request to amend in order to join Dirtvest and Sandhill as Defendants.[2] *See* Doc. # 80.

This case is now before the Court on Southdown's Motion for Summary Judgment (Doc. # 81) and GEC's Unopposed, Renewed Motion to Join Parties as Defendants and to Amend Complaint (Doc. # 87). As a means of analysis, this Court will initially rule upon GEC's unopposed motion requesting leave to join Defendants and to amend its Complaint, following which it will turn to Southdown's entreaty for summary judgment.

## I. GEC's Unopposed, Renewed Motion to Join Parties as Defendants and to Amend Complaint (Doc. # 87)

In its Decision of January 13, 1999, this Court noted that the joinder of Dirtvest and Sandhill as Defendants was permissible under Fed.R.Civ.P. 19(a). Doc. # 80 at 8–9. However, the Court declined to allow GEC to amend its Complaint to accomplish that end, because it had not provided evidence that it had served the statutory notice, as required by 33 U.S.C. § 1365(b).[3] *Id.* at 9–10. In the absence of such notice, the Court concluded that allowing GEC to amend in order to join

---

**1.** Southdown has dismissed that suit, without prejudice. *See* Doc. # 53 in Case No. C–3–93–354.

**2.** The Court did not afford GEC the opportunity of reasserting its claim under Ohio's Fraudulent Conveyances Statute, since only "creditors" were permitted to maintain actions under that statute and GEC was not a creditor.

**3.** Section 1365(a) authorizes any person to commence an action on his own behalf, except as provided in § 1365(b), which precludes such a suit, prior to 60 days after the plaintiff has given notice of the alleged violation to the Administrator of the United States Environmental Protection Agency, the state in which violation is occurring and the alleged violator.

Dirtvest and Sandhill would have been futile, since claims against those entities would have been subject to dismissal under Fed.R.Civ.P. 12(b)(6). *Id.* at 10. With its renewed motion, GEC has provided a copy of the notice it served upon the Administrator of the United States Environmental Protection Agency, the state of Ohio, Dirtvest and Sandhill. Therefore, GEC has remedied the defect which caused this Court to deny its earlier request to amend in order to join Dirtvest and Sandhill. It is axiomatic that leave to amend is to be "freely given when justice so requires." Fed.R.Civ.P. 15(a). In *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), the Supreme Court indicated that a District Court should deny leave to amend, only in instances where the amendment would be futile, the moving party has acted in bad faith or has repeatedly failed to cure the deficiencies by previous amendments, the opposing party would be subjected to unfair prejudice or the moving party has unduly delayed. *See also, Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir.1994). Herein, given that GEC's renewed motion has not been opposed, this Court concludes none of the considerations identified by the Supreme Court in *Foman* convinces this Court that it should deny GEC's motion. Indeed, this Court has previously concluded that the joinder of Dirtvest and Sandhill as Defendants would have been appropriate, except for the absence of notice. Accordingly, the Court sustains GEC's Unopposed, Renewed Motion to Join Parties as Defendants and to Amend Complaint (Doc. # 87), which has not been opposed. GEC is ordered to file and to serve its amended complaint, within 20 days from date. As soon as these newly added Defendants have entered an appearance, a scheduling conference will be held.

## II. Southdown's Motion for Summary Judgment (Doc. # 81)

As an initial matter, this Court will set forth the standards which are applicable to all motions for summary judgment. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548. *See also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.") (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed.R.Civ.P. 50). *Street v.*

*J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). *See also Michigan Protection and Advocacy Service, Inc. v. Babin,* 18 F.3d 337, 341 (6th Cir.1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson,* 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all *reasonable* inferences in the favor of that party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the factfinder. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure,* § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). *See also L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.,* 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment...."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

Southdown argues that it is entitled to summary judgment, because its sale of the property to Dirtvest and Sandhill has rendered moot GEC's request for an injunction against it and, further, because GEC does not have standing to pursue a request for the imposition of civil penalties under the CWA.[4] As a means of analysis, this Court will address the two types of relief in the above order.

---

4. Southdown points out that GEC has also requested declaratory relief and an award of costs, including fees for attorneys and expert witnesses. This Court agrees with Southdown that if GEC cannot obtain an injunction (because of mootness) or pursue its request for the imposition of penalties (because of an absence of standing), it cannot maintain its requests for declaratory relief or costs.

## A. *Injunctive Relief*

In its Complaint, GEC alleges that Southdown has violated and continues to violate the CWA, by discharging pollutants from the landfill into Mud Run Creek, without having obtained the requisite permit.[5] *See* Doc. # 1 at ¶ 13 (alleging that Southdown discharges and will continue to discharge pollutants from the landfill into Mud Run Creek). GEC requests that this Court "issue an injunction permanently enjoining [Southdown] from any and all future violations of the [CWA]." *Id.* at 5. Southdown contends that such a request for injunctive relief has been rendered moot, because it sold the property upon which the landfill is located to Dirtvest and Sandhill. Since it no longer owns the landfill, Southdown's argument continues, it is not currently violating the CWA by discharging pollutants, without the requisite permit, from that facility into Mud Run Creek. Therefore, Southdown asserts, there exists no ongoing violation of the CWA by Southdown for this Court to enjoin.

As an initial matter, GEC has not challenged that Southdown has sold the landfill to Dirtvest and Sandhill. Indeed, such a challenge would have been fruitless. Southdown has attached to its motion the affidavit of Daniel Heintz ("Heintz"), its Vice President of Environmental Affairs. In that document, Heintz states that the tract of land upon which the landfill is located was sold to Dirtvest and Sandhill. Moreover, copies of the deeds by which that property was transferred to those entities are attached to and authenticated by Heintz' affidavit. Therefore, this Court concludes that Southdown has sold the landfill and turns to the question of whether that transaction renders moot GEC's prayer for injunctive relief against Southdown.

In support of this branch of its argument, Southdown has cited *Gwaltney of Smithfield v. Chesapeake Bay Foundation,* 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987). Therein, the plaintiff brought an action under § 1365, alleging that the defendant was in violation of the CWA. However, since it had ceased its violations before the suit was filed, the defendant argued that the plaintiff's claim must be dismissed. According to the defendant, § 1365 permitted a citizen suit to be maintained, only if the violations were ongoing at the time the suit had been filed. The District Court rejected that argument, concluding that such a suit could be based upon past violations alone. Alternatively, the District Court held that the plaintiff had alleged in good faith that the violations were continuing when suit had been filed; therefore, dismissal was not appropriate, even if § 1365 did not permit a citizen suit to be based exclusively upon past violations. Upon appeal, the Fourth Circuit affirmed, adopting only the rationale that a citizen suit could be based exclusively upon past violations. Upon further appeal, the Supreme Court concluded that a suit under § 1365 could not be based solely upon past violations; however, the Supreme Court also held that such an action could be based upon the plaintiff's good faith allegation that the defendant's violations of the CWA were continuing at the time that the suit was filed. The Supreme Court indicated that Fed.R.Civ.P. 11 would protect a defendant from frivolous allegations that its violations of the CWA had been continuing at the time of suit. 484 U.S. at 65, 108 S.Ct. 376. The *Gwaltney* Court also noted that the doctrine of mootness could protect a defendant from being forced to continue to defend a suit, if it had ceased its violations of the CWA, writing:

[Defendant] also worries that our construction of § [1365] would permit citi-

---

**5.** Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant, except in compliance with other provisions of that statute, including § 402, 33 U.S.C. § 1342. Section 402 allows the discharge of pollutants in accordance with a permit obtained under the National Pollutant Discharge Elimination System.

zen-plaintiffs, if their allegations of on-going noncompliance become false at some later point in the litigation because the defendant begins to comply with the Act, to continue nonetheless to press their suit to conclusion. According to [defendant], such a result would contravene both the prospective purpose of the citizen suit provisions and the "case or controversy" requirement of Article III. Longstanding principles of mootness, however, prevent the maintenance of suit when " 'there is no reasonable expectation that the wrong will be repeated.' " *United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953) (quoting *United States v. Aluminum Co. of America*, 148 F.2d 416, 448 (C.A.2 1945)). In seeking to have a case dismissed as moot, however, the defendant's burden "is a heavy one." 345 U.S., at 633, 73 S.Ct. 894. The defendant must demonstrate that it is *"absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur." *United States v. Concentrated Phosphate Export Ass'n, Inc.*, 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968) (emphasis added). [The][m]ootness doctrine thus protects defendants from the maintenance of suit under the Clean Water Act based solely on violations wholly unconnected to any present or future wrongdoing, while it also protects plaintiffs from defendants who seek to evade sanction by predictable "protestations of repentance and reform." *United States v. Oregon State Medical Society*, 343 U.S. 326, 333, 72 S.Ct. 690, 96 L.Ed. 978 (1952).

*Id.* at 66–67, 108 S.Ct. 376 (footnote omitted). Southdown has also cited a number of cases in which courts have applied the above-quoted language from *Gwaltney* and have held that a request for injunctive relief under § 1365 becomes moot, when the defendant has ceased to violate the CWA. *See e.g., Natural Resources Defense Council v. Texaco,* 2 F.3d 493 (3rd Cir. 1993); *Atlantic States Legal Foundation v. Pan American Tanning*, 993 F.2d 1017

(2nd Cir.1993); *Atlantic States Legal Foundation v. Tyson Foods, Inc.*, 897 F.2d 1128 (11th Cir.1990).

■ Rather than challenge any of the foregoing, GEC argues that Southdown has not met its "heavy burden" to demonstrate that the request for injunctive relief is moot. In particular, GEC contends that "Southdown has presented this Court with no evidence that should this Court ultimately order injunctive relief, Southdown will be prevented by its successors in interest from remedying the on-going illegal discharges at the landfill." Doc. # 84 at 8. Thus, according to GEC, Southdown would fail to demonstrate that GEC's request for injunctive relief against Southdown is moot, unless it could prove that Dirtvest and Sandhill would deny it access to the landfill, in order to comply with a directive from this Court that it take steps to prevent the continued discharge of pollutants from that facility. GEC misses Southdown's point. GEC has alleged that Southdown is violating the CWA by discharging pollutants from the landfill into Mud Run Creek, without having obtained the requisite permit. GEC requests that this Court enjoin Southdown from future violations of the CWA. Given that Southdown has sold the landfill, it is no longer violating the CWA in the manner alleged by GEC; therefore, the request that this Court enjoin it from doing so in the future is moot.

GEC also argues that Fed.R.Civ.P. 25(c) permits this litigation to proceed against Southdown, despite its sale of the landfill. Rule 25(c) provides:

(c) *Transfer of Interest.* In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party.

In support of this argument, GEC cites *Texaco, supra.* Therein, the Third Circuit rejected the defendant's argument that the

plaintiff's request for injunctive relief under § 1365 had been rendered moot by its transfer of the refinery, from which pollutants were allegedly being discharged in violation of the CWA. 2 F.3d at 506. The Third Circuit noted that Rule 25(c) did not require that the transferee be joined and that an injunction entered against the transferor was binding upon its successors in interest. *Id.* Texaco fails to convince this Court that the claim for injunctive relief against Southdown is not moot. Therein, the Third Circuit did not intimate that despite the transfer of the refinery, the District Court could enter an injunction requiring the transferor to do anything; rather, the Third Circuit merely concluded that the action could proceed against the original defendant and that the injunction would be binding upon the transferee of the property. Herein, although this litigation will not proceed against the original Defendant, Southdown, any injunction entered by this Court will be binding upon the transferees, since *at the request of GEC,* this Court has permitted the joinder of Dirtvest and Sandhill. Therefore, this action will proceed, and GEC will have the opportunity to obtain injunctive relief from the entities that are allegedly violating the CWA at the present time.

Accordingly, this Court sustains Southdown's Motion for Summary Judgment (Doc. # 81), to the extent that, with that motion, it requests summary judgment on GEC's request for injunctive relief.

*B. Civil Penalties*

■ The CWA provides that any person who violates certain sections of that statute "shall be subject to a civil penalty not to exceed $25,000 per day for each violation." 33 U.S.C. § 1319(d). Under 33 U.S.C. § 1365(a), a District Court may impose such penalties in an action brought by a citizen. Of course, any civil penalties imposed in a citizen suit must be paid to the Government. *See e.g.,Gwaltney, supra.* Southdown argues that GEC does

not have standing to prosecute its request that this Court impose civil penalties, because none of the members of that association would have standing to pursue such a request. In *Friends of the Earth v. Laidlaw Environmental Services,* —— U.S. ——, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (*"Laidlaw III"*), the Supreme Court reiterated the familiar requirements of standing, including those of associational standing:

> In *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), we held that, to satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977).

*Id.* at 704.

■ As is indicated, Southdown argues that GEC is without standing, because none of its members has standing to request this Court to impose civil penalties. Thus, Southdown does not challenge that the interests at stake in this litigation are germane to GEC's purposes; nor does it contend that the participation of individual members of GEC would be necessary to the claim asserted or the relief requested. With respect to the issue of standing for the members of GEC, Southdown focuses exclusively upon the third prong of the test for standing and argues that any injuries

suffered by the members of GEC would not be redressed by the imposition of civil penalties against it (Southdown). For reasons which follow, this Court concludes that the Supreme Court's decision in *Laidlaw III* undercuts Southdown's assertion that GEC is without standing to pursue its request that this Court impose civil penalties.

The plaintiffs in that litigation alleged that the defendant was violating the CWA and brought suit under § 1365, seeking injunctive relief and the imposition of penalties. After a trial, the District Court concluded that injunctive relief was unwarranted, because subsequent to the filing of the suit, the defendant had come into substantial compliance with the CWA. *Friends of the Earth v. Laidlaw Environmental Services*, 956 F.Supp. 588 (D.S.C.1997) ("*Laidlaw I*"). The District Court did, however, assess a civil penalty of $405,800 against the defendant. *Id.* Although the defendant appealed the assessment of civil penalties, the plaintiffs did not challenge the decision of the District Court to decline to enter injunctive relief. The Fourth Circuit vacated the assessment of penalties, concluding that the failure of the plaintiffs to challenge the District Court's decision to decline to enter injunctive relief had rendered the case moot, because they were without standing to request the District Court to impose civil penalties on the defendant. *Friends of the Earth v. Laidlaw Environmental Services*, 149 F.3d 303 (4th Cir.1998) ("*Laidlaw II*"), *reversed,* — U.S. ——, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). To reach that conclusion, the Fourth Circuit started with the premise that mootness is "the doctrine of standing set in time." 149 F.3d at 306. The Court then turned to the question of whether the plaintiffs had standing to seek the imposition of civil penalties (the only remedy available to the plaintiff, since they had not

appealed the denial of injunctive relief), focusing exclusively upon the redressability prong of the standing inquiry. The Fourth Circuit concluded that the plaintiffs were without standing, since "civil penalties payable to the government would not redress any injury Plaintiffs have suffered." *Id.* at 307. Upon further appeal, the Supreme Court reversed, rejecting the Fourth Circuit's conclusion that the plaintiffs were without standing. *Laidlaw III.* The Supreme Court initially noted that the Fourth Circuit had improperly "conflated" the doctrine of standing to initiate a suit with mootness. —— U.S. at ——, 120 S.Ct. at 700. The Supreme Court concluded that the imposition of civil penalties could redress the plaintiffs' injury and that, therefore, they had standing to request that the District Court impose civil penalties on the alleged violator of the CWA, writing:

> It can scarcely be doubted that, for a plaintiff who is injured or faces the threat of future injury due to illegal conduct ongoing at the time of suit, a sanction that effectively abates that conduct and prevents its recurrence provides a form of redress. Civil penalties can fit that description. To the extent that they encourage defendants to discontinue current violations and deter them from committing future ones, they afford redress to citizen plaintiffs who are injured or threatened with injury as a consequence of ongoing unlawful conduct.

*Id.* at 706–07.

Based upon the Supreme Court's decision in *Laidlaw III*, this Court concludes that GEC has standing to request this Court to impose civil penalties upon Southdown.[6] Accordingly, the Court overrules Southdown's Motion for

---

**6.** In support of its assertion that GEC is without standing to pursue a request that this Court impose civil penalties, Southdown has placed primary reliance upon the Fourth Circuit's decision in *Laidlaw II*. As did the

Fourth Circuit in *Laidlaw II*, Southdown has conflated the doctrines of standing and mootness. Southdown has not argued, as it did with respect to GEC's request for injunctive relief, that its sale of the landfill has rendered

Summary Judgment (Doc. # 81), to the extent that, with that motion, it seeks summary judgment on GEC's request for the imposition of such penalties.

the request for the imposition of civil penalties moot, under the principles enunciated in *Gwaltney*. Rather, Southdown merely contends that GEC is without standing to request such relief, because the imposition of civil penalties payable to the Government would not redress the injuries suffered by its members.

In addition, Southdown has cited *Dubois v. U.S. Dept. of Agriculture*, 20 F.Supp.2d 263 (D.N.H.1998), wherein the District Court followed the reasoning of the Fourth Circuit in *Laidlaw II*. Given that the Supreme Court has reversed that decision, *Dubois* is not persuasive. Southdown has also relied upon *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). In *Laidlaw III*, the Supreme Court

indicated that *Steel Co.* merely held that "citizen suitors lack standing to seek civil penalties for violations that have abated by the time of suit." —— U.S. at ——, 120 S.Ct. at 707. The Supreme Court rejected the argument that *Steel Co.* could be read to support the proposition that a plaintiff initiating a citizen suit was without standing to seek the imposition of civil penalties to redress violations that were ongoing at the time suit was filed. *Id.* at 707–08. Herein, GEC has alleged that the allegedly unlawful discharges from the landfill were ongoing, when this action was filed; therefore, *Steel Co.* does not support the argument that GEC is without standing to request this Court to impose civil penalties upon Southdown.