**NATURAL RESOURCES DEFENSE COUNCIL; San Diego Baykeeper; Kenneth J. Moser, Plaintiffs,**

v.

**SOUTHWEST MARINE, INC., Defendant.**

**No. 96–CV–1492–B(AJB).**

United States District Court, S.D. California.

Jan. 28, 1999.

Charles S. Crandell, Law Office of Charles S. Crandell, San Diego, Cal., Joel R. Reynolds, NRDC, Los Angeles, CA, Scott H. Peters, Peters and Varco, San Diego, CA, Everett DeLane, Law Office of Everett L. DeLane, Carlsbad, CA, for plaintiffs.

Steven McDonald, Lou, Hamilton & Scuppo, San Diego, CA, Edward Patrick Swann, Lloyd A. Schwartz, Southwest Marine, CA, for defendant.

## ORDER GRANTING MOTION FOR RECONSIDERATION AND AFFIRMING OPINION AND ORDER OF NOVEMBER 20, 1998

BREWSTER, Senior District Judge.

### I.  Introduction

■ Defendant Southwest Marine (SWM) brings a motion to reconsider this Court's Opinion and Order of November 20, 1998.[1]  That Order denied SWM's motion in limine seeking to preclude potential imposition of civil penalties for alleged violations of the Clean Water Act.[2]  The Mo-

---

1. The Court takes judicial notice of the Northern District of California's November 19, 1998 Order on Pretrial and In Limine Motions filed in *San Francisco Baykeeper, et al. v. Cargill Salt Division, et al.* and the U.S. Government's amicus curiae brief in the same matter.  As the brief is not a "fact," legal or adjudicative, but only legal argument, Fed. R.Evid. 201 is not a bar.  Moreover, Defendant undercuts its opposition to judicial notice of this amicus brief when it cites to the brief in its Reply.

2. The parties have completed a lengthy bench trial before this Court.  Pending is this Court's issuance of a Memorandum of Decision.  No decision has been made whether civil penalties will be awarded, and this Court's past and present Orders should in no way be considered harbingers of whether that relief will be granted.

tion to Reconsider is GRANTED;[3] however, the Order of November 20, 1998 is AFFIRMED.

## II. Analysis

Defendant's motion is an elaboration of the argument put forth in its original motion. Defendant continues to insist that *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998), represents a new overarching principle of constitutional jurisprudence whereby citizen suit plaintiffs never have standing to seek penalties for violations of an environmental statute if those penalties are payable to the U.S. Treasury.[4] Defendant's position is without exception, i.e., civil penalties are never available to citizen suit plaintiffs, no matter if the Defendant may be engaged in continuing violations of the Clean Water Act.

### A. *Steel Co.* Does Not Apply With Continuing Violations

█ Defendant reads *Steel Co.* too broadly. *Steel Co.* involved the limited situation in which an environmental advocacy group sought civil penalties—and only civil penalties—for wholly past violations of the Emergency Planning and Community Right-to-Know Act of 1986 (EPCRA),

42 U.S.C. § 11046(a)(1). *Steel Co.* did not involve allegations of ongoing violations nor did the facts suggest that there was a likelihood that such violations might occur in the future. Because *Steel Co.* did not address the issue of penalties in the context of ongoing violations, nor address when civil penalties are requested in addition to other remedies, *Steel Co.* did not invalidate all statutorily-provided civil penalties in citizen suit cases without exception.

Defendant asserts that the issue of wholly past violations was "immaterial," "irrelevant," and "made no difference" to the *Steel Co.* analysis. By ignoring the facts of *Steel Co.*, Defendant is able to assert that penalties can never serve as a deterrent, regardless of the status of alleged violations.[5] That is not the holding of *Steel Co.* In *Steel Co.*, in the absence of a continuing violation or the imminence of a threatened violation, the request for civil penalties did not confer standing because plaintiff could only have a "generalized" interest in imposing civil penalties which would be paid to the U.S. Treasury and thus any injury suffered would not be redressed. 118 S.Ct. at 1018.

The instant matter is quite different. Plaintiffs have alleged, and Defendant

3. Plaintiffs correctly note that Defendant raises this motion without apparently complying with either the Federal Rules of Civil Procedure or the Local Rules of this Judicial District. No new facts or circumstances are alleged to support the motion for reconsideration in compliance with Rule 7.1. *See Sure-Safe Industries, Inc. v. C & R Pier Mfg.*, 851 F.Supp. 1469, 1471 (S.D.Cal.1993). The Court regards Defendant's Motion as one claiming clear error on the part of the Court. The Court considers Defendant's Motion based on the import of the issue and to achieve finality on this question. Moreover, the Court suggested that Defendant would have another opportunity to argue its point. This is that opportunity.

4. For instance, in its Motion, Defendant entitles its argument: "Nothing in *Steel Co.* Implies that its Absolute Holding was Factually Contingent." Likewise, the Defendant asserts that "[t]he Supreme Court's decision was

based on constitutional interpretation as opposed to the facts of that case." In its Reply, Defendant characterizes the holding of *Steel Co.* as a "flat rule." The breadth of Defendant's argument would stretch to all instances in which Congress has provided for citizen suits by statute.

5. For support of its interpretation, Defendant once again cites to *Friends of the Earth, Inc. v. Laidlaw Services, Inc.*, 149 F.3d 303 (4th Cir. 1998) and *Dubois v. U.S. Dept. of Agriculture*, 20 F.Supp.2d 263 (D.N.H.1998). However, even if binding on this Court, both *Laidlaw* and *Dubois* are cases based on the principle of mootness, not standing, and thus are not on point. The Court also notes that *Dubois* specifically did not reach the issue of whether civil penalties would ever be available, even with ongoing violations, because the court had already imposed an injunction. *Dubois*, 20 F.Supp.2d at 267 n. 3.

does not dispute, sufficient concrete, particularized, and actual injuries to confer standing to bring their case. *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Likewise, Plaintiffs have alleged continuing violations that contribute to the alleged injuries. The question then is—will the potential or actual imposition of civil penalties help remedy Plaintiffs' alleged injuries?

Civil penalties may have a remedial effect if they deter Defendant's alleged violations. Deterrence comes in two forms—specific and general. As stated, *Steel Co.* held that penalties that only contribute to "generalized deterrence" were insufficient to satisfy standing's redressability prong. 118 S.Ct. at 1018. Without deciding whether penalties should be imposed, this Court finds that the possible imposition of monetary penalties would contribute to specifically deterring current violations alleged to be harming Plaintiffs. With alleged continuing violations, because there are alleged current harms, in contrast to wholly past violations, a court does not have to engage in an abstract evaluation of whether a defendant may or may not repeat its illegal conduct and cause future harms. The alleged malfeasance is immediate and tangible, and the imposition of civil penalties may help stop it. If there is specific deterrence of Defendant's conduct, then there is redress on an equivalent

basis to any injunction this Court could issue. The Court also notes that Plaintiffs have asked this Court to apply a portion of any penalties imposed to local projects that have a beneficial impact on San Diego Bay. This Court has taken a similar step in previous litigation. *See United States v. City of San Diego*, 1991 WL 163747, *5 (S.D.Cal. April 18, 1991). The availability of this alternative strengthens the redressability aspect of civil penalties in significant measure.

As the redress Plaintiffs seek is related to remedy of a specific injury, *Steel Co.*'s concern that the monetary penalty remedy will only impart "psychic satisfaction," or that the Plaintiffs will only derive "comfort and joy" from the potential levy of monetary penalties, is not implicated. 118 S.Ct. at 1019. The risk of allowing citizens to take on the mantle of purely public prosecutors without consideration of their own injuries is likewise not at issue. Plaintiffs' interest in conforming Defendant's conduct to the dictates of the Clean Water Act is not an "undifferentiated" interest in enforcing the rule of law, but instead in stopping behavior they allege is causing it legally cognizable injuries.[6]

Defendant argues that *Steel Co.*'s language stating that injunctive relief would remedy harms caused by ongoing violations implies by negative inference that civil penalties are precluded even with ongoing violations.[7] 118 S.Ct. at 1019.

---

6. The Court also notes that the statutory violations alleged in the instant matter are more substantial in their potential harmful effect than a failure to file required documents, as was the case in *Steel Co.* The injurious effect on the environment of the failure to file data under EPCRA's reporting requirement is an attenuated one, while the failure to adopt and implement proper stormwater management plans and practices—if true—may have a far more immediate effect.

7. If one accepted the Defendant's argument, an interesting situation is presented. If the Court found ongoing violations at the time of the complaint but also concluded that Defendant had come into compliance with Act during the course of the case, and then held that Article III precluded civil penalties, the Plain-

tiffs would be left without a remedy. In essence, a defendant would be allowed to avoid pre-complaint compliance, despite a notice of suit, then take the required steps to achieve compliance at the last moment—thus ignoring the Act until its hand was finally forced—and walk away scott-free. If the economic benefits of late compliance outweighed defendant's litigation costs, such a decision would be a rational one, notwithstanding the costs imposed upon the judicial system. Moreover, the plaintiffs might very well be precluded a recovery of attorney's fees. Needless to say, the willingness of citizens to bring suit under that possible scenario, despite Congress' sanction of the utility of citizen suits as a secondary means of enforcement, would be vastly diminished if not entirely eroded.

First, the Court is hesitant to read too much of a negative inference from this language, especially considering the Court's decision in *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found.*, 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987), that civil penalties are available for ongoing violations. The absence of any suggestion in *Steel Co.* that *Gwaltney* is no longer good law is instructive. Second, such a negative inference flies in the face of established jurisprudence holding that monetary penalties do have a deterrent effect. *See, e.g., Bennett v. Spear*, 520 U.S. 154, 117 S.Ct. 1154, 1163–64, 137 L.Ed.2d 281 (1997); *Department of Revenue of Mont. v. Kurth Ranch*, 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994) ("Criminal fines, civil penalties, civil forfeitures, and taxes all share certain features: They generate government revenues, impose fiscal burdens on individuals *and deter certain behavior.*") (emphasis added); *Hudson v. United States*, 522 U.S. 93, 118 S.Ct. 488, 494, 139 L.Ed.2d 450 (1997); *City of Los Angeles v. Lyons*, 461 U.S. 95, 112–113, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (implying that compensatory damages may deter future illegal conduct). Likewise, Congress, by including provision for civil penalties in citizen suits implicitly determined that civil penalties have a deterrent effect.[8] *See, e.g.,* S.Rep. No. 228, 101st Cong., 1st Sess. 373 (1989), *reprinted in* 1990 U.S.C.C.A.N. 3386, 3756 ("[A]ssessment of civil penalties for violations ... [is] necessary for deterrence, restitution, and retribution" under the Clean Air Act with citizen suits.); *Tull v. United States*,

481 U.S. 412, 422–23, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987) ("[A court] may also seek to deter future violations by basing the penalty on [a violation's] economic impact. Subsection 1319(d)'s authorization of punishment to further retribution and deterrence clearly evidences that this subsection reflects more than a concern to provide equitable relief."); *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 314, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982) ("An injunction is not the only means of ensuring compliance [with the Clean Water Act]. The FWCPA ... provides for fines and criminal penalties."). Most corporations facing the possibility of $25,000–per–day fines would rethink the activities that are alleged to be harming an individual.

Likewise, Defendant's argument that *Steel Co.* can be read consistently with *Gwaltney*, and still preclude all citizen suit claims for civil penalties is in error. In *Gwaltney*, the plaintiff's complaint alleged ongoing violations of the Clean Water Act, but these alleged violations had apparently ceased by the time the case reached the Supreme Court. Despite this knowledge, the Court remanded the case for a determination of remedy, barring only a consideration of civil penalties for wholly past violations. As such, *Gwaltney*'s implicit holding is that civil penalties are available when continuing violations are alleged at the time of the filing of the complaint.[9] *See, e.g.,* Jim Heckler, EPCRA Citizen Suits After Steel Co. v. Citizens for a Better Environment, 28 Envtl.L.Rep.

---

**8.** Defendant asserts that this Court is "overly cautious in deferring to the goals of Congress in providing for civil penalties, at the expense of rigorous examination of Article III redressability requirements. Article III—not congressional policy—should continue to govern the boundaries of constitutional standing, and hence, the court's jurisdiction over civil penalty claims." The Court recognizes that Article III forms the basis of a party's ability to present a case before an Article III court, but is cognizant of the legislative branch's ability to define harms and to grant remedies which may give a party standing to the full extent,

though not beyond, Article III. *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 577, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Defendant confuses this recognition and deference to Congress's findings and policy aims with an abrogation of Article III. The Court is not stating that the citizen suit provision, by its mere existence, gives a plaintiff standing.

**9.** Moreover, the lower court did impose civil penalties. *See Chesapeake Bay Found. v. Gwaltney of Smithfield, Ltd.*, 890 F.2d 690, 698 (4th Cir.1989).

10306 (1998).[10] *Steel Co.* does not upset this facet of *Gwaltney,* despite *Steel Co.*'s discussion of *Gwaltney* in relation to the concept of statutory standing.[11]

Defendant replies that it is the not the generalized or specific nature of the deterrence at issue, but who is the recipient of the damages sought, that precludes imposition of civil penalties. Defendant reads *Steel Co.* as meaning that since an interest in monies paid to the U.S. Treasury can never remedy an injury, one never has standing to assert a claim for damages. Defendant is properly focused on the injury, but, for the above stated reasons, i.e. because civil penalties can remedy Plaintiffs' asserted injuries by deterring Defendant's alleged violations, the Court concludes that civil penalties awarded to the U.S. Treasury may remedy the Plaintiff's injuries.

Finally, Defendant's argument that *Steel Co.* pronounces a new constitutional principle regarding standing is premised on a fundamental misconception of the nature and limitations of the judicial branch. As stated in the Court's previous Order, courts decide cases; they do not issue constitutional pronouncements. Courts, even the Supreme Court, do not interpret the Constitution in the abstract. Courts only do so in the context of a specific case or controversy. Indeed, statements of the

law that are unnecessary to support the court's holding, and which are unrelated to the facts, are properly considered dicta. The very basis for the doctrine of standing is to ensure that courts do not operate as Defendant insists the Court must have in *Steel Co.*

**B. Civil Penalties are Available Irrespective of Grant of Injunctive Relief**

■ On the assumption that civil penalties are never an appropriate remedy, Defendant bootstraps from *Steel Co.* to argue that this Court should hold that Plaintiffs must have standing to bring their case and then must have an additional layer of standing to seek a particular remedy. In this manner, Defendant is arguing by alternative avenue that even if there are ongoing violations, a citizen suit plaintiff is barred from seeking civil penalties. In its previous Order, this Court concluded that standing is not an analysis performed on each remedy sought by a plaintiff. Put another way, if a plaintiff has Article III standing to seek at least one remedy, that plaintiff has standing to seek other available remedies even if a court would conclude that that same plaintiff would not have standing with respect to an additional remedy otherwise insufficient.

**10.** Heckler's insight into *Steel Co.*'s impact on the mootness doctrine is also illuminating. "[N]either the Steel Co. nor Gwaltney decisions evidence any intent to create any new law concerning mootness. The Gwaltney decision cited and applied 'long-standing principles of mootness.' The Steel Co. decision similarly cited and quoted from prior decisions on mootness, without enunciating any intent to deviate from established principles. '[T]he Supreme Court has long directed courts to analyze a mootness claim directed at one form of relief separately from a mootness claim directed at the other.' For example, in *Powell v. McCormack,* the Court stated that '[w]here several forms of relief are requested and one of these requests subsequently becomes moot, the Court has still considered the remaining requests.... [T]he remaining live issues supply the constitution-

al requirement of a case or controversy.' " *Id.*.

**11.** *Steel Co.* is critical of *Gwaltney*'s approach to standing only to the extent that *Gwaltney* did not explicitly discuss standing, and thus any implicit standing holding from *Gwaltney* would not have precedential effect. However, *Steel Co.* does not take issue with, and apparently approves of, *Gwaltney*'s finding of standing: "The District Court had statutory jurisdiction over the suit in any event, since continuing violations were also alleged. It is true ... that the issue of Article III standing which is addressed at the end of the opinion should technically have been addressed at the outset if the statutory question was not jurisdictional. That also did not really matter, since Article III standing was in any event found." *Steel Co.,* 118 S.Ct. at 1011.

Defendant takes exception to the Court's view on this point, citing *City of Los Angeles v. Lyons*, 461 U.S. at 102, and a list of cases following *Lyons*.[12] Defendant asserts that these cases hold that standing is required for each and every remedy sought by a plaintiff. Defendant reads *Lyons* as holding that "a plaintiff must have standing to seek each form of relief it requests; or, put another way, that standing to seek one form of relief, such as injunctive relief, does not automatically confer standing to seek other relief, such as penalties." *See* Reply, p. 1–2.

This Court has stated that standing stems from the "cases or controversies" language of Article III; standing is not inherently focused on the specific remedies a plaintiff seeks unless no remedy sought could redress a plaintiff's injuries. Defendant has refined its argument, and cited new case law. Upon further review, the Court again concludes that *Lyons* and its progeny do not upset that usual proposition. The narrow 5–4 decision in *Lyons* turned in great measure on the issue of police conduct, an unwillingness to assume that a governmental body would not comply with the law in the future, and more general separation of powers concerns.

*See Lyons*, 461 U.S. at 112, 103 S.Ct. 1660; *see also Allen v. Wright*, 468 U.S. 737, 760–761, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984).[13] Every case cited by Defendant is, like *Lyons*, a case involving allegations of harm from official or quasi-official conduct. Even those courts issuing broad characterizations of the holding of *Lyons* do so in the limited context of plaintiffs seeking injunctive relief against governmental action. *See, e.g., Nat. Maritime Union*, 824 F.2d at 1234. In sum, *Lyons* has not been transmogrified into a principle governing only private actors. Defendant fails to cite a single case outside the state action context in which a claim for damages—in the presence of ongoing violations—has been subjected to a separate standing analysis.[14] This is "a case brought ... to enforce specific legal obligations whose violation works a direct harm," *Allen v. Wright, supra*, 468 U.S. at 761, 104 S.Ct. 3315, and so *Lyons* and its progeny are not applicable.

Next, Defendant argues that *Steel Co.*'s citation to *Linda R.S. v. Richard D.*, 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973), and *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976), implies that

**12.** The cases cited by Defendant are: *The Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 529–29 (9th Cir.1989); *O'Neal v. City of Seattle*, 66 F.3d 1064, 1066 (9th Cir.1995); *Coleman v. Watt*, 40 F.3d 255, 259 (8th Cir.1994); *Wagshal v. Foster*, 28 F.3d 1249, 1252 (D.C.Cir.1994); *Facio v. Jones*, 929 F.2d 541, 544 (10th Cir.1991); *Tucker v. Phyfer*, 819 F.2d 1030, 1034 (11th Cir.1987); and *Nat. Maritime Union of America v. Commander, MSC*, 824 F.2d 1228, 1234 (D.C.Cir. 1987).

**13.** " 'When a plaintiff seeks to enjoin the activity of a government agency, even within a unitary court system, his case must contend with the well-established rule that the Government has traditionally been granted the widest latitude in the dispatch of its own internal affairs.' When transported into the Art. III context, that principle, grounded as it is in the idea of separation of powers, counsels against recognizing standing in a case brought, not to enforce specific legal obligations whose violation works a direct harm,

but to seek a restructuring of the apparatus established by the Executive Branch to fulfill its legal duties. The Constitution, after all, assigns to the Executive Branch, and not to the Judicial Branch, the duty to 'take Care that the Laws be faithfully executed.' " *Allen v. Wright*, 468 U.S. at 760, 104 S.Ct. 3315 (quoting *Rizzo v. Goode*, 423 U.S. 362, 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976)).

**14.** The Court is well-aware of Justice Marshall's dissenting comment in *Lyons* that "[b]y fragmenting the standing inquiry and imposing a separate standing hurdle with respect to each form of relief sought, the decision today departs significantly from this Court's traditional conception of the standing requirement and of the remedial powers of the federal courts." 461 U.S. at 127, 103 S.Ct. 1660. As explained, except in the limited context of an injunctive relief remedy with respect to governmental action, Justice Marshall's fears have not been realized. *Thus, the "traditional conception" has apparently not been upset.*

*Steel Co.'s* holding is not limited to cases where only wholly past violations are alleged. Again, Defendant is in error. Both *Linda R.S.* and *Simon* involved suits against a governmental entity in the hope that changes in government practice or behavior might change the behavior of a private third-party and thus benefit the plaintiff. As such, both cases are inapposite. *Linda R.S.* involved a suit to require a prosecutor to institute an action for non-payment of child support against the father of an illegitimate child. *Simon* involved the effect of a tax exemption on a hospital's provision of services to potential users of those services. In both cases, the Court was concerned with the indirectness of the injury to the plaintiff, and the uncertainty that any order issued by a court would redress that injury in light of the fact that the defendant was not the direct causal agent of that injury. Only with respect to police misconduct cases has the Court ever suggested that redressability might be lacking in the absence of third-party action. *See, e.g., Lyons,* 461 U.S. at 105, 103 S.Ct. 1660; *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); *Steel Co.,* 118 S.Ct. at 1018 n. 7. In the instant matter, there is no such qualm regarding the directness and redressability of the plaintiffs' alleged injuries.

■ This Court's conclusion is buttressed by the wide swath of case law holding that civil penalties are available to a plaintiff even if the issue of injunctive relief becomes moot. Mootness with respect to the claim for injunctive relief does not moot the remedy of civil penalties. The Court notes that, in order to reach its result, *Laidlaw* held contrary to seven other circuit courts of appeal. *See, e.g., Comfort Lake Ass'n, Inc. v. Dresel Contracting Inc.,* 138 F.3d 351 (8th Cir.1998); *Atlantic States Legal Found. v. Stroh Die Casting Co.,* 116 F.3d 814, 820 (7th Cir.), cert. denied, —— U.S. ——, 118 S.Ct. 442, 139 L.Ed.2d 379 (1997); *NRDC v. Texaco Ref. & Mktg. Inc.,* 2 F.3d 493, 503 (3d Cir. 1993); *Atlantic States Legal Found., Inc.*

*v. Pan Am. Tanning Corp.,* 993 F.2d 1017, 1021 (2d Cir.1993); *Carr v. Alta Verde Indus. Inc.,* 931 F.2d 1055, 1065 n. 9 (5th Cir.1991); *Atlantic States Legal, Found. v. Tyson Foods Inc.,* 897 F.2d 1128 (11th Cir.1990); *Pawtuxet Cove Marina Inc. v. Ciba–Geigy Corp.,* 807 F.2d 1089, 1094 (1st Cir.1986), cert. denied, 484 U.S. 975, 108 S.Ct. 484, 98 L.Ed.2d 483 (1987).

Finally, if a plaintiff is able to demonstrate an injury sufficient to meet the standards of Article III, a court should not deliberately undermine the ability to redress those injuries by denying the availability of certain remedies. As stated, Congress has statutorily given citizen suit plaintiffs the right to seek civil penalties for ongoing violations of the Clean Water Act based on the finding that such penalties help deter these violations. First, the notice provision of the Clean Water Act already allows an alleged violator to come into compliance with the Act in a manner that then precludes a citizen suit. To make the issue of penalties moot after an alleged violator failed to respond to plaintiff's notice of suit would render the notice section superfluous. Second, the Court finds the reasoning of the Third Circuit persuasive:

"A citizen suit would lose much of its effectiveness if a defendant could avoid paying any penalties by post-complaint compliance. If penalty claims could be mooted, polluters would be encouraged to 'delay litigation as long as possible, knowing that they will thereby escape liability even for post-complaint violations, so long as violations have ceased at the time the suit comes to trial.' Moreover, whether or not damage claims are mooted would depend on the vagaries of when the district court happens to set the case for trial. We cannot embrace a rule that would weaken the deterrent effect of the Act by diminishing incentives for citizens to sue and encourage dilatory tactics by defendants." *NRDC v. Texaco,* 2 F.3d at 503–05 (citing *Atlantic States Legal*

*Found., Inc. v. Tyson Foods, Inc.,* 897 F.2d 1128, 1137 (11 Cir.1990).).

### III.  Conclusion

The Supreme Court may one day decide that plaintiffs bringing citizen suits do not have standing under any circumstances to seek civil penalties payable to the U.S. Treasury.  But that was not at issue in *Steel Co.* and thus was not decided.  Current case law, statute, and the better policy arguments demonstrate that civil penalties are available to a citizen suit plaintiff. This Court is constrained to apply the law as it stands today, not speculate as to evolving trends.  Having reconsidered its previous order of November 20, 1998, that Order is AFFIRMED.

IT IS SO ORDERED.