**The OLD TIMER, INC. and Robert L. Grisenti, Plaintiffs,**

**v.**

**BLACKHAWK–CENTRAL CITY SANITATION DISTRICT, En–Tech Inc. a/k/a Environmental Technicians, Inc., Water Quality Management Corp., Inc., and Donald Blender d/b/a Blender & Associates, Defendants.**

**No. Civ. 93–WM–249.**

United States District Court, D. Colorado.

June 17, 1999.

---

James C. Underhill, Jr., Greenwood Village, CO, for plaintiffs.

Kim J. Seter, Greenwood Village, CO, for defendants.

## MEMORANDUM OPINION AND ORDER

LUCERO, Circuit Judge.

This matter comes before the court on the following motions: (1) defendant Blackhawk–Central City Sanitation District's Motion to Dismiss Pursuant to Fed. R.Civ.P. 12(b), converted to a Motion for Summary Judgment on June 2, 1993; (2) defendant En-tech, Inc.'s Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b), converted to a Motion for Summary Judgment on June 2, 1993; (3) defendant Water Quality Management Corporation's Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b), converted to a Motion for Summary Judgment on June 2, 1993; (4) defendant Donald Blender's Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b), converted to a Motion for Summary Judgment on June 2, 1993; and (5) plaintiffs The Old Timer and Robert L. Grisenti's Motion for Partial Summary Judgment, filed April 25, 1994. After careful consideration of the record, briefs, and arguments, I make the following determinations:

### I. Undisputed Facts

1. Plaintiff The Old Timer, Inc., is owned and operated by plaintiff Robert L. Grisenti. The Old Timer is a tourist attraction offering the opportunity to pan for gold in North Clear Creek. It is a seasonal operation, obtaining much of its business through word-of-mouth advertising. When panning for gold, tourists have physical contact with the river.

2. Defendant Blackhawk–Central City Sanitation District ("District") is a Colorado Special District responsible for collecting and treating wastewater and sewage from the towns of Blackhawk and Central City, Colorado. The District operates a sewage treatment plant that discharges wastewater into North Clear Creek under a state-issued National Pollutant Discharge Elimination System permit.

3. The District contracts out at least a portion of its treatment plant operating duties. From 1989 through June 1991, defendant Donald Blender, doing business as Blender & Associates, operated the treatment plant. From June 1991 through August 1992, defendant En-tech, Inc., also known as Environmental Technicians, Inc., operated the sewage treatment plant. From August 1992 to the present, the plant has been operated by defendant Water Quality Management Corp., Inc.

4. Upon the advent of legalized gambling, the towns of Blackhawk and Central City expanded quickly. In July and August 1992, the District violated the effluent discharge allowances of its permit on numerous occasions. On September 8, 1992, the state Water Quality Control Division (WQCD) of the Colorado Department of Health (CDH) issued the District a Notice of Violation and Cease and Desist Order (NOV/CDO) covering the July and August violations.

5. The Old Timer is located seven miles downstream from the District's sewage treatment plant. On September 22, 1992, it gave the District notice of its intent to sue, as required by both the Clean Water Act, 33 U.S.C. § 1365(b), and the Colorado Governmental Immunity Act, Colo.Rev. Stat. § 24–10–109 (1999). The notice incorporated by reference the state's NOV/CDO of September 8, 1992. The Old Timer filed this lawsuit on January 29, 1993.

6. To bring itself into compliance with its permit, the District devised a three-part

plan that included immediate actions, interim improvements, and a large-scale treatment plant expansion. Discharge violations continued throughout the interim period, causing the federal Environmental Protection Agency (EPA) to issue a Notice of Violation on August 26, 1993. On October 20, 1993, the state WQCD issued a second NOV/CDO, covering all significant violations occurring between August 1, 1992 and September 30, 1993.

7. On March 31, 1995, the WQCD issued a "Public Notice of Intended Civil Penalty," giving notice of its proposed negotiated civil penalty of $85,000 against the District. The public was invited to submit comments. On May 8, 1995, The Old Timer submitted its comments and the affidavit testimony of an expert witness. The Old Timer requested a hearing before the state Water Quality Control Commission, which was denied. The CDH approved the agreement on September 19, 1995, and issued an order imposing the $85,000 civil penalty. The Old Timer's request for reconsideration was denied, and its appeal to the Water Quality Control Commission was dismissed for lack of jurisdiction.

8. On August 19, 1996, The Old Timer filed a petition in state district court, seeking judicial review of the state penalty order. The Old Timer did not serve the petition or prosecute the case.

## II. Legal Analysis

In 1972, Congress enacted the Federal Water Pollution Control Act, codified at 33 U.S.C. §§ 1251–1376, to ameliorate the pollution of the nation's navigable waters. This comprehensive statutory scheme, also known as the Clean Water Act (CWA), has been amended on numerous occasions. This case requires me to construe several of the CWA's provisions, as amended.

Defendants argue this court lacks subject matter jurisdiction over The Old Timer's citizen suit based on two provisions of the CWA, 33 U.S.C. § 1319(g)(6)(A)(ii) and (iii). They argue further that the District's subsequent improvements to the treatment plant mooted the citizen suit.

In addition, the operator-defendants argue they were not given the statutorily required notice, and defendants Blender and En-tech argue they are not proper defendants because their involvement with the treatment plant ended before this suit was commenced. Finally, The Old Timer seeks partial summary judgment as to defendants' liability for violations.

### A. Jurisdiction to Bring Suit Under the CWA

The CWA prohibits any person from discharging pollutants into navigable waters unless the discharge is authorized by a National Pollutant Discharge Elimination System permit. These permits may be issued by the EPA or by a federally approved state program. See 33 U.S.C. § 1342(a) & (b). Discharge limitations imposed in a state-issued permit may be enforced by the state, by the EPA, or by a private citizen. See §§ 1319, 1365.

When the EPA chooses to enforce the discharge limitations, it has several options to choose from, contained in § 1319. The agency may issue a compliance order under § 1319(a), notifying the polluter of the violation and requiring it to comply with the permit conditions by a specific deadline. The agency may commence a civil or criminal action against the polluter, seeking an injunction, penalties, or imprisonment. See § 1319(b), (c), and (d). Finally, the agency may assess an administrative penalty against the polluter under § 1319(g).

A private citizen may also bring a civil action "against any person ... alleged to be in violation of ... an effluent standard or limitation under [the CWA] or ... an order issued by ... a State with respect to such standard or limitation." § 1365(a)(1). In such cases, the district court has jurisdiction to enforce the effluent standard or limitation and to assess any appropriate civil penalties. See id. at § 1365(a).

When enacting the CWA, Congress expected that most enforcement actions would be brought by governmental agen-

cies, viewing citizen suits as appropriate only when the government failed to fulfill its enforcement role. *See Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 60, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987) (noting the citizen's role was intended to supplement, not supplant, governmental enforcement). To ensure the primacy of governmental enforcement, Congress enacted several restrictions on a citizen's commencement of an action. Before bringing suit, a citizen must give at least sixty days' notice of his or her intent to file to the alleged polluter, to the EPA, and to the state. Thereafter, the citizen may not commence a suit if the EPA or the state "has commenced and is diligently prosecuting a civil or criminal action in a court . . . to require compliance." § 1365(b)(1).[1]

A citizen is also precluded from filing a civil action if § 1319(g)(6) applies. *See* § 1365(a). Section 1319(g)(6), in relevant part, precludes citizen suits for violations for which "the State has commenced and is diligently prosecuting an action under a State law comparable to [the CWA's administrative penalty subsection]," § 1319(g)(6)(A)(ii), or "for which the . . . State has issued a final order not subject to further judicial review and the violator has paid a penalty assessed under . . . such comparable State law," § 1319(g)(6)(A)(iii). I conclude that neither of these statutory restrictions precludes The Old Timer's action.

Before The Old Timer commenced its suit, the only action initiated by the WQCD was the issuance of a compliance order to the District. Case law is split on whether this is sufficient to preclude a citizen suit under § 1319(g)(6)(A)(ii). *Compare Citizens for a Better Env't–Cal. v. Union Oil Co. of Cal.*, 83 F.3d 1111, 1118 (9th Cir.1996) (holding citizen suit was not precluded because state's action was brought under a cease and desist provision, not a penalty provision); *Washing-*

*ton Pub. Interest Research Group v. Pendleton Woolen Mills*, 11 F.3d 883 (9th Cir.1993) (holding that citizen suits are not barred by the clear language of § 1319(g)(6)(A) if the EPA has only commenced an administrative compliance action); *Friends of Santa Fe County v. LAC Minerals, Inc.*, 892 F.Supp. 1333, 1347 (D.N.M.1995) (holding "section 1319(g)(6)(A)(ii) is narrowly drawn; its preclusionary effect applies only when the EPA . . . or a state is in the process of collecting or has already collected administrative penalties"); *Molokai Chamber of Commerce v. Kukui (Molokai), Inc.*, 891 F.Supp. 1389, 1403–05 (D.Haw.1995) (holding language of statute requires state to seek penalties before citizen action barred); *Public Interest Research Group of N.J., Inc. v. New Jersey Expressway Auth.*, 822 F.Supp. 174, 184 (D.N.J.1992) (holding § 1319(g) inapplicable because, inter alia, "no penalties were assessed"), *with North & South Rivers Watershed Ass'n, Inc. v. Town of Scituate*, 949 F.2d 552, 555–57 (1st Cir.1991) (holding state's issuance of a compliance order barred citizen suit as long as the state had the power to seek penalties, but exercised its discretion not to do so); *Sierra Club v. Colorado Ref. Co.*, 852 F.Supp. 1476, 1484–85 (D.Colo.1994) (rejecting argument that state must actually seek penalties before citizen suits are precluded, holding that CDH commenced action when it served its compliance order); *New York Coastal Fishermen's Ass'n v. New York City Dep't of Sanitation*, 772 F.Supp. 162, 165 (S.D.N.Y.1991) (holding that "it cannot be reasonably argued that only when a penalty is actually imposed that a citizen suit is precluded," and characterizing such a reading as "an overly technical interpretation" that would "unnecessarily undermine state and local enforcement efforts.").

■ Viewing the CWA enforcement scheme as a whole, and considering certain

---

1. This section does not apply here, however, because the WQCD's action against the District was not brought in a "court." *See Jones v. City of Lakeland*, 175 F.3d 410, 413 (6th Cir.1999) (holding administrative board was not a "court" for purposes of the Clean Water Act).

statements made during § 1319(g)'s enactment, I conclude Congress intended to preclude citizen suits only when the EPA or the state has already commenced an "administrative penalty action" against a polluter. When the CWA was first enacted, the EPA had two enforcement options: to issue a compliance order under § 1319(a), or to bring a civil or criminal action in court under § 1319(b)–(d). Under this scheme, the CWA precluded citizen suits only when the EPA or a state had already commenced a civil or criminal action "in court." § 1365(b). Importantly, citizen suits were not precluded when the EPA had simply issued a compliance order.

In 1987, Congress amended the CWA to give the EPA authority to assess administrative penalties without bringing a court action. This newly enacted subsection, § 1319(g), requires certain procedures before administrative penalties could be imposed, including notice, a hearing, and significant public participation. Paralleling § 1365(b)'s preclusion of citizen suits when an agency was already proceeding against a polluter in court, subsection (g) precludes citizen suits when the EPA or a state has commenced an action under the administrative penalty subsection or a comparable state statute, or when administrative penalties have been assessed and paid. Notably, the new language does not preclude citizen actions when the EPA simply issues a compliance order under § 1319(a). Further, by specifying that state action, to be preclusive, must have been brought under a law comparable to subsection (g), without mentioning subsection (a) compliance actions, Congress expressed its intent to preclude citizen actions only when the state is actively seeking an administrative penalty.

The legislative history of the amendment leaves little doubt as to Congress's intent. The language of § 1319(g) was first proposed in the Water Quality Act of 1986, which was vetoed by President Reagan. The language was then included verbatim in the Water Quality Act of 1987.

The 1986 House Conference Report, approved unanimously by both House and Senate, described the citizen preclusion language (incorporated into the final product) as follows:

> No one may bring an action to recover civil penalties under sections 309(b) and (d), 311(b), or 505 [citizen suits] of this Act for any violation with respect to which the Administrator has commenced and is diligently prosecuting *an administrative civil penalty action,* or for which the Administrator has issued a final order not subject to further judicial review (and for which the violator has paid the penalty). *This limitation applies only to an action for civil penalties for the same violations which are the subject of the administrative civil penalty proceeding. It would not . . . . apply to:* 1) an action seeking relief other than civil penalties (e.g., an injunction or declaratory judgment); 2) *an action under section 505(a)(1) of this Act filed prior to commencement of an administrative civil penalty proceeding for the same violation;* or 3) a violation which has been the subject of a notice of violation under section 505(b)(1) of this Act prior to initiation of the administrative penalty process, provided that, in the latter case, an action under section 505(a)(1) of this Act is filed within 120 days of the notice of violation. . . . The Agency can prevent duplicate proceedings by intervening in the ongoing citizen enforcement suit or by bringing its own judicial action before a citizen suit is filed.

H.R.Conf. Rep. No. 99–1004, at 133 (1986) (emphasis added).

When introducing the final bill to the Senate in 1987, Senator Chaffee, who was the primary drafter and chairperson of the Senate conferees, described the citizen preclusion provision as follows:

> New paragraph 309(g)(6) sets out limitations that preclude citizen suits where the Federal Government or a State has commenced and is diligently prosecuting *an administrative civil penalty action*

or has already issued a final administrative civil penalty order not subject to further review and the violator has paid the penalty .... under a State law that is comparable to section 309(g). For example, in order to be comparable, a State law must provide for a right to a hearing and for public notice and participation procedures similar to those set forth in section 309(g); it must include analogous penalty assessment factors and judicial review standards; and it must include provisions that are analogous to the other elements of section 309(g) .... Finally, section 309(g)(6)(A) provides that violations with respect to which a Federal or State *administrative penalty action* is being diligently prosecuted or previously concluded "shall not be the subject of" civil penalty actions under sections 309(d), 311(b), or 505 [citizen suits]. This language is not intended to lead to the disruption of any Federal judicial penalty action then underway, but *merely indicates that a Federal judicial civil penalty action or a citizen suit is not to be commenced if an administrative penalty proceeding is already underway.*

133 Cong.Rec. 1264 (1987) (emphasis added). This legislative history further indicates that the language of § 1319(g)(6)(A)(ii) is not intended to preclude citizen suits, such as this one, when an administrative penalty proceeding has not yet been commenced as of the suit's filing.

■ The statements quoted above also clarify that the WQCD's later assessment of an administrative penalty and the District's payment thereof did not retroactively defeat the court's jurisdiction over The Old Timer's suit. The provisions of § 1319(g)(6)(A) only prevent a citizen from "commenc[ing]" an action. *See* § 1365(a). Once the citizen suit has been properly filed, the court has jurisdiction, notwithstanding the state's subsequent assessment of an administrative penalty. *See* H.R.Conf. Rep. 99–1004, at 133 (stating that § 1319(g)(6) would not apply to citizen suits "filed prior to commencement of an administrative civil penalty proceeding for the same violation"); 133 Cong.Rec. at 1264 (Senator Chaffee's statement that the preclusion was not intended to disrupt any ongoing proceedings, but to prevent the commencement of citizen suits when an administrative penalty action was already proceeding); *Long Island Soundkeeper Fund, Inc. v. New York City Dep't of Envtl. Protection,* 27 F.Supp.2d 380, 383–84 (E.D.N.Y.1998) (holding language of CWA made it clear that "state prosecution of the same claims, no matter how diligent, will not preclude a properly filed private action, or require its dismissal"); *Natural Resources Defense Council, Inc. v. Loewengart & Co.,* 776 F.Supp. 996, 1000 (M.D.Pa.1991) (holding when state did not bring action against polluter within the sixty-day notice period, subsequent consent decree with polluter did not affect citizen suit); *cf. Sierra Club v. United States Dep't of Energy,* 734 F.Supp. 946, 951 (D.Colo.1990) (construing comparable citizen suit provisions of Resource Conservation and Recovery Act to preclude citizen suits "only if, before plaintiff files suit, a state or federal agency has commenced and is diligently prosecuting a civil or criminal action") (quotation omitted).

Because the WQCD had not yet commenced an action for administrative penalties or assessed such penalties before The Old Timer filed its suit, § 1319(g)(6) does not preclude this citizen action. For this reason, I do not need to determine whether Colorado's administrative penalty provisions are sufficiently "comparable" to the provisions of § 1319(g).

### B. Mootness

■ The next question is whether the District's subsequent improvements to the treatment plant mooted The Old Timer's suit by bringing the District into compliance with its permit. Mootness is a jurisdictional question derived from Article III of the United States Constitution, which restricts the exercise of judicial power to instances where a "case or controversy" exists.

■ A claim for injunctive relief becomes moot when there is no reasonable expectation that the polluter will continue to pollute in the future. *See Gwaltney*, 484 U.S. at 66, 108 S.Ct. 376. Here, the District has presented evidence that its treatment plant upgrades have corrected the problem underlying the permit violations, and that its effluent discharges have been within permit limits since December 1994. *See* Ex. A to the District's Update Regarding Pending Motions for Summary Judgment; Ex. A to the District's Response to The Old Timer's Supplemental Br. The Old Timer has neither presented evidence to contradict this nor filed a Fed. R.Civ.P. 56(f) affidavit describing the evidence it expects to present after discovery. The Old Timer's only evidence is that since the improvements were completed there have been several sewer overflows, and that on two occasions, the river smelled of sewage. Neither of these submissions is adequate to raise a factual question regarding whether the treatment plant's effluent discharges continued to violate the permit, which is the subject of this lawsuit. I conclude, therefore, that The Old Timer's claim for injunctive relief is moot because the District has shown it is now in compliance and that its permanent improvements make it unlikely that the discharge violations at issue in this case will continue.

■ The District's post-complaint compliance does not, however, moot The Old Timer's claim for civil penalties. The overwhelming majority of circuits considering this issue have held that even if a polluter's post-complaint compliance moots a citizen's claim for injunctive relief, the citizen's claim for civil penalties is not moot. *See Comfort Lake Ass'n, Inc. v. Dresel Contracting Inc.*, 138 F.3d 351, 356 (8th Cir.1998) (holding "even if a polluter's voluntary permanent cessation of the alleged violations moots a citizen suit claim for injunctive relief, it does not moot a related claim for civil penalties"); *Atlantic States Legal Found., Inc. v. Stroh Die Casting Co.*, 116 F.3d 814, 820 (7th Cir.) (holding "[i]f the violation is cured at some point while the suit is pending, ... the

case nevertheless does not become moot .... [because] civil penalties ... would be recoverable for any time period in which Stroh was found to be in violation"), *cert. denied,* — U.S. ——, 118 S.Ct. 442, 139 L.Ed.2d 379 (1997); *Natural Resources Defense Council, Inc. v. Texaco Ref. & Mktg. Inc.*, 2 F.3d 493, 503 (3d Cir.1993) (holding "once a citizen plaintiff establishes an ongoing violation of a parameter at the time the complaint is filed, the court is obliged to assess penalties for all proven violations of that parameter"); *Atlantic States Legal Found., Inc. v. Pan Am. Tanning Corp.*, 993 F.2d 1017, 1021 (2d Cir. 1993) ("We hold ... that a defendant's ability to show, after suit is filed but before judgment is entered, that it has come into compliance with limits on the discharge of pollutants will not render a citizen suit for civil penalties moot"); *Carr v. Alta Verde Indus. Inc.*, 931 F.2d 1055, 1065 n. 9 (5th Cir.1991) ("[E]ven had [defendant's post-complaint] improvements mooted the plaintiffs' action for injunctive relief, it would not necessarily have mooted the plaintiffs' action for civil penalties") (dicta); *Atlantic States Legal Found., Inc. v. Tyson Foods Inc.*, 897 F.2d 1128, 1135 (11th Cir.1990) (holding "the mooting of injunctive relief will not moot the request for civil penalties as long as such penalties were rightfully sought at the time the suit was filed"); *Pawtuxet Cove Marina, Inc. v. Ciba–Geigy Corp.*, 807 F.2d 1089, 1094 (1st Cir.1986) ("A plaintiff who makes allegations warranting injunctive relief in good faith, judged objectively, may recover a penalty judgment for past violations even if the injunction proves unobtainable.").

I note two recent decisions holding that once a citizen's claim for injunctive or declaratory relief became moot, the citizen's claim for civil penalties was also rendered moot. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 149 F.3d 303, 306–07 (4th Cir.1998) (holding when citizen's claims for injunctive and declaratory relief became moot, claim for civil penalties was also moot because penalties paid to United States Treasury could

not redress citizen's injury), *cert. granted,* —— U.S. ——, 119 S.Ct. 1111, 143 L.Ed.2d 107 (1999); *Dubois v. United States Dep't of Agric.,* 20 F.Supp.2d 263, 268 (D.N.H.1998) (holding once injunctive relief granted, claim for civil penalties became moot because penalties would not redress citizen's harm). These cases rely on the United States Supreme Court's opinion in *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998), which concluded that a citizen lacked standing to bring an action when, before suit was filed, the defendant had fully cured its failure to submit certain reports. Noting that the requested civil penalties would be paid to the United States Treasury, the Court held such penalties would not redress the citizen's limited informational injury, but would only redress its "undifferentiated public interest" in the faithful execution of the laws. *Id.* at 1018 (citation and quotation omitted). It is important to note that at the time suit was filed, there was no ongoing violation of the statute sought to be enforced. *See id.* at 1018–19.

Here, in contrast, The Old Timer alleged ongoing violations causing direct injuries to its business and property, including damage to its word-of-mouth tourist reputation. Taking steps taken to ensure the District's future compliance with its permit and fining the polluter for its recent violations may well alleviate the concerns of potential clients or repeat customers, and thus redress the injury to The Old Timer's tourist reputation. *See Tull v. United States,* 481 U.S. 412, 422–23, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987) (noting purpose of CWA civil penalties is to provide retribution, deterrence, and restitution); *Texaco Ref. & Marketing, Inc.,* 2 F.3d at 503 n. 9 ("Citizens file actions [under the CWA] primarily to deter future violations by the named defendant and other potential polluters, and the imposition of penalties significantly enhances the deterrent effect of a citizen suit."). Unlike in *Steel Co.,* then, the requested civil penalties do not simply provide The Old Timer "psychic satisfaction" by vindicating an "undifferen-

tiated public interest" in enforcing the law, and the claim is not moot. *See also Ellis v. Brotherhood of Ry., Airline & S.S. Clerks, Freight Handlers, Express & Station Employees,* 466 U.S. 435, 442, 104 S.Ct. 1883, 80 L.Ed.2d 428 (1984) (holding "as long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot").

My decision that The Old Timer's claim for penalties is not moot is supported by the Supreme Court's decision in *Gwaltney.* The *Gwaltney* Court remanded the case for determination of a remedy despite its apparent knowledge that the CWA violations had been corrected by subsequent improvements, and that defendant was then in compliance with its permit. *See* 484 U.S. at 53–55, 108 S.Ct. 376. Because *Steel Co.* cited *Gwaltney* with approval, without implying that the Court erred in remanding the case despite the defendant's post-complaint compliance, I conclude that *Steel Co.* does not require dismissal of this case. *See Natural Resources Defense Council v. Southwest Marine, Inc.,* 39 F.Supp.2d 1235, 1239–40 (S.D.Cal.1999) (noting *Gwaltney* had remanded case for determination of a remedy despite the Court's knowledge that CWA violations had ceased before the case reached Supreme Court, and holding civil penalties claim for ongoing violations provided standing despite *Steel Co.*).

## C. Res Judicata

■ Although The Old Timer's civil penalty action is not precluded by either § 1319(g)(6)(A) or the mootness doctrine, some of its claims—those specifically covered by the state agency's final order—are nonetheless barred. The CDH's civil penalty order is a final judgment assessing penalties for many of the same violations as are at issue in this case. On similar facts, the Tenth Circuit held in *Satsky v. Paramount Communications, Inc.,* 7 F.3d 1464, 1467–70 (10th Cir.1993), that an environmental lawsuit by the State of Colorado precluded later claims by private citizens based on injuries to the state's natural

resources. The citizens were entitled to bring claims for injuries to their "purely private interests," however. *Id.* at 1470. The court emphasized that a state and its private citizens are in privity when the state, acting as parens patriae, brings an action for damage to a public resource. *See id.* at 1469–70; *see also City of Tacoma v. Taxpayers of Tacoma,* 357 U.S. 320, 340–41, 78 S.Ct. 1209, 2 L.Ed.2d 1345 (1958) (holding a "final judgment ... was effective, not only against the State, but also against its citizens, including the taxpayers of Tacoma, for they, in their common public rights as citizens of the State, were represented by the State"); *United States Envtl. Protection Agency v. City of Green Forest,* 921 F.2d 1394, 1403–04 (8th Cir.1990) (holding citizen suit barred by res judicata when, after citizen action filed, EPA entered into consent decree with polluter involving the same claims).

██ Here, then, the State brought an action to stop the District's pollution of North Clear Creek, which is a public resource. It recovered civil penalties for such injuries through May 16, 1994. *See* Settlement Agreement and Stipulated Order, attached to the District's Supplement to Defendant's Briefs Regarding Motion to Dismiss. Although The Old Timer is entitled to seek private damages for this period, its CWA claims for civil penalties are barred by the CDH's final order.[2] Because each permit violation gives rise to a separate cause of action, however, res judicata bars only those violations covered by the penalty order. *Cf. Tyson Foods, Inc.,* 897 F.2d at 1138–39 (holding each separate violation subjects polluter to a separate $25,000 penalty). Thus The Old Timer is precluded by res judicata from seeking civil penalties for violations occurring between July 1992 and May 16, 1994.

██ Although The Old Timer seeks civil penalties for violations occurring before and after this period, many of these viola-

tions were not included in its notice of intent to sue, and thus may not be the subject of a CWA suit. The Old Timer's notice incorporated by reference the permit violations contained in the WQCD's initial NOV/CDO, starting in July 1992. As the notice did not specifically identify any pre-July 1992 violations, and there is no evidence that such episodic violations are related to the discharge violations incorporated into its notice, The Old Timer may not seek civil penalties for any of the pre-July 1992 violations. *Cf. Public Interest Research Group of N.J., Inc. v. Hercules, Inc.,* 50 F.3d 1239, 1248 (3d Cir.1995) (holding notice must enable recipient to identify the specific parameter violated, the date of the violation, the outfall at which it occurred, and the persons involved, and holding that notice will cover other violations "directly related" to the discharge violation or "arising from the same episode").

The discharge violations occurring after May 16, 1994, however, are still actionable, if they are related to the violations covered by the NOV/CDO. That is, The Old Timer may still maintain its civil penalty action for violations of the parameters listed in the NOV/CDO that occurred after May 16, 1994. Its claims regarding sewer blockages and overflows, however, are not related to the effluent discharge violations and are not a proper subject of this lawsuit.

The District has admitted that related permit violations continued until at least December 1994. Because of the delay in this case, the record does not contain sufficient evidence to determine the type and number of related permit violations that occurred after May 16, 1994. Instead, additional evidence must be presented at a hearing, and if permit violations are shown, this court must then determine the appropriate penalty to be imposed, using the criteria set out in § 1319(d) of the

---

2. The fact that this case involves an administrative decision, as opposed to a court judgment, does not matter, as Colorado accords res judicata effect to administrative decisions.

*See Dale v. Guaranty Nat'l Ins. Co.,* 948 P.2d 545, 549 (Colo.1997); *Mid–Continent Resources, Inc. v. Looby,* 877 P.2d 1385, 1387–88 (Colo.Ct.App.1994).

CWA. *See Texaco Ref. & Marketing, Inc.,* 2 F.3d at 503 (holding imposition of penalties mandatory for each proven violation of a parameter "once a citizen plaintiff establishes an ongoing violation of a parameter at the time the complaint is filed").

### D. Operator Liability

■ The United States Supreme Court has made it clear that the sixty-day notice is a mandatory precondition to suit. *See Hallstrom v. Tillamook County,* 493 U.S. 20, 26–27, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989) (holding that sixty-day notice provision in a comparable statute was a mandatory precondition that should be construed strictly). Here, The Old Timer did not serve any of the current operators with the required notice. Therefore, the operators are not proper defendants in this case. *See New Mexico Citizens for Clean Air & Water v. Espanola Mercantile Co.,* 72 F.3d 830, 833 (10th Cir.1996) (holding Indian tribe was not proper party to action because of its failure to comply strictly with the CWA's sixty-day notice provision).

■ Further, the Court has held that a citizen suit may not be brought for wholly past violations. *See Gwaltney,* 484 U.S. at 57–63, 108 S.Ct. 376 (holding citizen suits may be brought only to remedy ongoing violations of the CWA). When The Old Timer commenced its lawsuit, neither Blender nor En-tech, Inc. was operating the treatment plant, and thus their alleged violations had to have occurred wholly in the past.

For these reasons, summary judgment is granted in favor of defendants Blender, En-tech, Inc., and Water Quality Management Corp., Inc. As the court lacks subject matter jurisdiction over these defendants, it cannot exercise pendent jurisdiction over the state law claims against these defendants.

### E. Attorney Fees

■ Section 1365 authorizes an award of attorney fees in citizen suits to a prevailing or substantially prevailing party. These fees are available even if the citizen's claims are dismissed after termination of a parallel agency enforcement action, so long as the citizen suit played a role in bringing about the successful termination of the agency action. *See, e.g., Atlantic States Legal Found., Inc. v. Eastman Kodak Co.,* 933 F.2d 124, 127–28 (2d Cir.1991) ("We believe that when the polluter's settlement with state authorities follows the proper commencement of a citizen suit, one can, absent contrary evidence, infer that the existence of the citizen suit was a motive for the polluter's settlement and that the citizen suit plaintiff is therefore a prevailing party."); *City of Green Forest,* 921 F.2d at 1402 (noting citizens' role in spurring EPA into taking action against city and remanding for determination of attorney fees).

To be entitled to fees, The Old Timer must show that its citizen action was a substantial factor leading to the relief obtained, and that the defendant's conduct was required by law. *See Beard v. Teska,* 31 F.3d 942, 951–52 (10th Cir.1994). "The lawsuit need not be the only reason for the defendant's changed conduct, but it must be a substantial factor or significant catalyst." *Colorado Envtl. Coalition v. Romer,* 796 F.Supp. 457, 459 (D.Colo.1992) (quotations omitted). The Tenth Circuit has noted that the "sequence of events" can support an inference that the plaintiff's actions were a catalyst for the relief obtained. *See Beard,* 31 F.3d at 952.

Here, The Old Timer sought to end the District's ongoing pollution of North Clear Creek, and to prevent the District from violating the permit limitations in the future. The acts taken by the District—improving its facilities to remediate the ongoing pollution and to prevent future permit violations—provided exactly the relief sought by The Old Timer. Further, this conduct was required by law, i.e., the Clean Water Act. Finally, there is at least some evidence in the record that The Old Timer's conduct motivated both the WQCD to enforce the law strictly and the District to make the improvements and settle the penalty proceeding. Whether or not The Old Timer's citizen action was a

substantial factor bringing about this conduct is a factual question that cannot be decided by summary judgment.

### III. Conclusion

The District's motion for summary judgment is DENIED in part and GRANTED in part. The motions for summary judgment by defendants Blender, En-tech, Inc., and Water Quality Management Corp., Inc. are GRANTED, and the claims against them are dismissed for lack of jurisdiction. The Old Timer's Motion for Partial Summary Judgment is DENIED. The case is referred back to the Honorable Walker D. Miller for determination of the following issues:

1. Liability of the District for CWA violations after May 16, 1994, and imposition of appropriate penalties;

2. Liability of the District on The Old Timer's pendent state law claims; and

3. The Old Timer's entitlement to attorney fees under § 1365, both as a prevailing party for violations occurring after May 16, 1994, and as a prevailing party for earlier violations if its lawsuit was a substantial factor motivating the WQCD's enforcement proceeding or the District's act of bringing itself into compliance and settling the penalty proceeding.